**COMMERCIAL UNION ASSURANCE COMPANIES, Plaintiff-Appellant,**

v.

**SEARS, ROEBUCK AND CO. and Whirlpool, Inc., Defendants-Appellees.**

**No. 81–2289.**

United States Court of Appeals, Tenth Circuit.

Sept. 7, 1983.

J. Warren Jackman, Pray, Walker, Jackman, Williamson & Marlar, Tulsa, Okl. (Wil-

liam D. Lunn, Jr., Pray, Walker, Jackman, Williamson & Marlar, Tulsa, Okl., with him on brief), for plaintiff-appellant.

Dennis J. Downing, Tulsa, Okl. (David R. Milsten, Tulsa, Okl., with him on brief), for defendants-appellees.

Before HOLLOWAY and DOYLE, Circuit Judges, and BREITENSTEIN, Senior Circuit Judge.

WILLIAM E. DOYLE, Circuit Judge.

The plaintiff herein is Commercial Union Assurance Companies. The action was brought in the United States District Court for the Northern District of Oklahoma. The defendants were Sears, Roebuck and Co., the retailer of the subject washing machine, and Whirlpool, Inc., the manufacturer of the Kenmore washing machine. In a subrogation action, plaintiff's claim was that the washing machine, as a result of defective design, caused a fire in plaintiff's insured's home, resulting in a total of $80,449.20 damages. The jury returned a verdict in favor of the defendants.

A motion for judgment notwithstanding the verdict and a motion for a new trial were filed, but were overruled by the trial court. The plaintiff has appealed the trial court's ruling with regard to both motions.

Plaintiff-appellant alleged that a fire in the home of the insured was brought about by the unreasonably dangerous design of the washing machine which Mrs. Becko, the machine owner, had purchased from Sears, Roebuck and Co. The fire in the Becko residence occurred on September 3, 1977. Mrs. Becko had left the home on that date and had allowed the washing machine and dryer to continue to run. The fire caused the damages which were stipulated to.

On behalf of the plaintiff there was a great deal of evidence, circumstantial and expert, to the effect that frayed wires within the washing machine probably caused the fire. Plaintiff sought to establish that the wires which passed over the lip of the washing machine had rubbed through the insulation on the wires, causing them to short out

or arc, and either to ignite or to cause the control box to short out and ignite, all of which spread the flames to nearby combustible material.

The evidence on behalf of the defendants showed that the precautions taken in designing and manufacturing the washer would have prevented the events upon which plaintiff based its case. Defendants' evidence, also circumstantial and expert, was meant to demonstrate that a fire of unknown origin melted the insulation on the wires permitting the arcing.

Thus, the primary issue before the jury was whether the shorting of the wires caused the fire, or whether the fire caused the shorting. A finding that the washing machine caused the fire and that it was defectively designed in a manner that made it unreasonably dangerous would have resulted in a verdict for the plaintiff.

The instructions pertaining to the mentioned issue were given without any objections. They are as follows:

You are instructed that the mere fact of injury or damage is not proof of a defect in a manufactured product and raises no presumption of defectiveness.

Defectively designed means an inherent condition in the basic plan or concept of the product which renders it unreasonably dangerous.

You are instructed that an article is unreasonably dangerous if it is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it with the ordinary knowledge common to the community of users as to its characteristics.

\* \* \* \* \* \*

If you find and believe from a preponderance of the evidence in this case that the washing machine in question was defectively designed making it unreasonably dangerous and that such defective design was the direct and proximate cause of the plaintiff's damage and that such defective design existed at the time the washing machine left the possession and control of the defendants, then your verdict

should be in favor of the plaintiffs. You are instructed, however, that if you do not so find and believe from a preponderance of the evidence, then your verdict should be for the defendants.

Following deliberations by the jury for over an hour, that body submitted two questions to the judge. These are as follows:

*Question No. 1:*

It is unanimous that we think the fire started in the washing machine but the question of definition of "unreasonably dangerous" is in question.

We furthermore agree that the unfinished edge is bad design practice but whether it is unreasonably dangerous is undecided.

We need a definition of unreasonably dangerous. [circled]

*Question No. 2:*

Is the basis of our decision based on *both* facts:

#1 That the fire started in the machine and caused the house fire?

#2 That the unfinished edge is unreasonably dangerous, or is the basis of our decision based on either fact?

We cannot decide if the unfinished edge should be called bad practice or unreasonably dangerous.

Based upon the questions, the court brought counsel to chambers where they and the court discussed how to reply to the jury.

The crux of the case on review is whether the court should have amplified the instructions following the questions on the part of the jury which showed that they did not understand parts of the instructions. The trial judge concluded that:

[T]he court cannot directly respond to their questions under the law. However, I will direct them to review the total instructions because the instructions contain a definition of unreasonably dangerous, but that it should be considered only in light of all of the instructions. That's what I think I am limited to telling them.

Thus, the judge was of the opinion that he could only instruct them as to the outlines, and could not further instruct with respect to matters which he had already, in a general way, covered.

■ Counsel for the plaintiff-appellant took the position at this conference that the instructions had to be clarified, inasmuch as the jury did not understand them, and that it could be done in the particular areas in which confusion existed. The plaintiff-appellant continued to argue that where the jury is having difficulty with the instructions, the court ought to develop further definitions so as to remove the confusion. The presence of confusion justifies this inasmuch as the instructions are for the purpose of providing the jury with the governing standards.[1]

■ The judge was of the view that to give further instructions would be reversi-

---

1. *Mr. Jackman:* [A]nd I would like to see their question answered as to what is unreasonably dangerous, intelligently and appropriately. The statement contained in the instruction, while a correct statement of the law, is somewhat inadequate in the total sense and—
*The Court:* But I cannot at this stage further instruct. (R.Vol.V. at 375–376)
*Mr. Jackman:* Well, okay, I think in fairness Your Honor ought to answer the second question, although that's covered in the instructions as well. (*Id.,* at 376)
    \*    \*    \*    \*    \*    \*
*Mr. Jackman:* As a matter of fact, and it's cut me both ways, but I have always maintained the same belief and that is that if the jury is having difficulty with the instructions that the Court ought to find a method of further defini-

tion to assist them. That's the purpose of instructions in the first place.
*The Court:* I agree. (*Id.*)
    \*    \*    \*    \*    \*    \*
*The Court:* I really don't think I can do what you request, even though it would seem reasonable. (*Id.,* at 378–379)
    \*    \*    \*    \*    \*    \*
*The Court:* I am sure that when this gets to them they will wonder about the whole process.
*Mr. Jackman:* Yes, I think so.
COMMENT: Contrary to the argument of counsel for appellees the present issue was forcefully raised. The exchange adequately establishes this. Plaintiff's arguments with the court are sufficient under Rule 51, F.R. C.P. to preserve this issue for appeal.

ble error, considering the stage of the case. The judge said:

I really don't think that at this stage the Court can start refining and issuing new instructions, I don't think I can do that.

The result was that the judge simply directed the jury that it could not further define terms or reinstruct, but that the jury had instructions containing a definition of "unreasonably dangerous," and that they should review this definition in conjunction with all of the instructions given by the court.

We are unable to say how the jury interpreted the court's answer. Defendants-appellees contend that the jury took the answer at face value, reread the original instructions, and then decided that although the washing machine started the fire because it was poorly designed, it was not "unreasonably dangerous." Alternatively, it is possible that the jury simply could have reconsidered its factual conclusions and found against plaintiff on other grounds.

The jury's questions showed that the members were confused as to the meaning of "unreasonably dangerous," a term that we in the law tend to take for granted. The court's subsequent non-answers to the jury's questions saying that he couldn't further define the terms may well have enhanced the jury's confusion. In effect, it foreclosed a further assertion of any continuing confusion.

Plaintiff maintains that only such confusion could have caused the jury, which unanimously determined the washing machine at issue caused the fire as the result of poor design, to decide in favor of defendant, apparently because the machine was not "unreasonably dangerous."

The issues raised include the following:
1. Whether the court should have supplemented its original charge in order to remedy the jury's confusion.
2. Whether the inconsistency between the jury's questions and its verdict was so apparent that the court should have granted either a judgment notwithstanding the verdict or a new trial.

The important issue is whether a clarifying instruction ought to have been given; that is, should the court have supplemented the charge. It is obvious that some confusion existed as well as a need for clarification. They twice requested that the court give them a definition of "unreasonably dangerous."

We have held that a trial judge has a duty to go beyond "mere abstract statements or legal definitions" where necessary in guiding the jury toward an intelligent understanding of the legal and factual issues it is to resolve. *Tyler v. Dowell, Inc.,* 274 F.2d at 897. In the *Tyler* case the fact that the jury returned to the courtroom twice to have the law of negligence clarified by supplemental instructions, together with the trial court's inability to give the jury meaningful amplification of its original charge, convinced this court that the jury did not grasp the legal and factual issues that were before it. It was ruled that there was a necessity to grant the *Tyler* appellant a new trial.

Other circuits have reversed judgments where the judge refused to clarify a charge. *Price v. Glosson Motor Lines, Inc.,* 509 F.2d 1033 (4th Cir.1975); *Walsh v. Miehle-Goss-Dexter, Inc.,* 378 F.2d 409, 415 (3d Cir.1967).

Appellees maintain that this case is distinguishable from *Tyler,* because here the jury did not ask the court for further clarification after being told by the court to reread the instructions. That argument overlooks the fact that the court first told them he could not "further define terms or reinstruct." In the face of that response, the jury could do nothing more to indicate its continuing confusion. Similarly, there is no logical reason to distinguish our case from *Walsh, supra.* While the jury in *Walsh* deliberated six hours before requesting clarification of its charge, the fact that the jury here was out only one hour before deciding to submit its questions to the court is a factual distinction which is not significant.

To determine when the courts are required to clarify the charge and give a

meaningful reply to a jury's inquiry depends on whether the question reveals a genuine confusion about a central issue in the case. If this condition exists it is plain that the jury needs enlightenment if it is to reach a decision with an understanding of the factual and legal issues presented to it.

In this case it is not impossible to understand why the jury could be confused. The jury could be confused as to the term "unreasonably dangerous." To the lawyer and to the judge this term might well seem to be fairly clear. But to a layman who is not accustomed to measuring unreasonableness in relationship to danger, it is more difficult, and it is also more important that the court clarify it.[2]

Nevertheless, appellate courts usually defer to the trial judge's discretion regarding matters of trial conduct. Here, for example, the trial judge had an opportunity to observe the jury before and during the trial. His answer to the jury's questions should be presumed to reflect that firsthand knowledge. In fairness, too, it should be noted that the trial judge formulated the instructions and his answer in accord with Oklahoma law and that he allowed the jury to see the instructions. Such circumstances are not sufficient to convince us that the jury was unable to understand the applicable law. *Tyler v. Dowell, Inc.,* supra, 274 F.2d at 897; *Great Atlantic and Pacific Tea Co. v. Jones,* 294 F.2d 495, 499–500 (5th Cir.1961).

**2.** The trial court's problem apparently was the fact that governing law was contained in the Oklahoma Supreme Court's decision in *Smith v. United States Gypsum Company,* 612 P.2d 251, 253 (1980). The judge was apparently apprehensive regarding the giving of any additional instruction on the subject being out of harmony with the mentioned Oklahoma law. Such a result seems unlikely since the problem was not complex. Indeed, an acceptable clarification is contained in Devitt and Blackmar *Federal Jury Practice and Instructions,* 3d, § 82.03 (1977) as follows:

A product is in a defective condition unreasonably dangerous to the user when it has a propensity for causing physical harm beyond that which would be contemplated by the ordinary user or consumer who purchases it, with the ordinary knowledge common to the foreseeable class of users as to its characteristics. A product is not defective or unrea-

In short, while the trial court misapprehended its power and duty to amplify instructions for a confused jury, we cannot say that its answer was such an abuse of discretion requiring a new trial.[3]

■ The plaintiff-appellant has raised the contention that based upon the factual findings that were set forth in the jury's questions, the trial court ought to have granted it a judgment notwithstanding the verdict. It is true that the questions indicate unanimous factual conclusions. They do not, however, point to final factual findings. Any evidentiary significance the "findings" in the questions have is balanced by the verdict the jury actually rendered. The trial court was not faced with evidence which was overwhelming in plaintiff's favor, and thus, the conditions which we find do not point to a necessity for deciding this case as a matter of law.

In conclusion, it is our view that the problem of answering jury questions was within the discretion of the trial judge. Accordingly, it is the conclusion of this panel that the ruling by the judge that he was unable to clarify the charge to the jury constituted the exercise of discretion; the fact that this writer at least would have exercised the discretion differently is not an adequate basis for reversal.

Accordingly, the judgment of the district court is affirmed.

sonably dangerous merely because it is possible to be injured while using it.
This instruction is consistent with the Oklahoma statement. *See also* the extension of this in the 82.03 pocket supplement.

**3.** The scope of the trial court's discretion is set forth in *Federal Procedure Lawyers Edition,* § 77.192, p. 145:
§ 77.192. Amplification of instructions; additional instructions
Since the court has wide discretion in charging the jury, it has discretion to amplify the charge, or give additional instructions, either on its own initiative or when requested by the jury. Concern about confusing or prejudicing the jury by overinstruction is appropriate but not compelling where the jury specifies its difficulty and confusion concerning instructions on the central issues in the case.