FILED
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

————————————————

**August 2, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

KELLY DANSIE, an individual,

    Plaintiff - Appellant,

v.

UNION PACIFIC RAILROAD CO., a
Delaware corporation,

    Defendant - Appellee.

No. 20-4054

————————————————

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:17-CV-01058-RJS)**

————————————————

Adam W. Hansen, Apollo Law LLC (Nicholas D. Thompson, The Moody Law Firm,
Portsmouth, Virginia, Justin L. James, James, Dodge, Russell, & Stephens, P.C., Salt
Lake City, Utah, and Michael E. Bourne, Minneapolis, Minnesota, with him on the brief),
Minneapolis, Minnesota, for Plaintiff-Appellant Kelly Dansie.

Christopher Hedican, Baird Holm LLP (Michael J. Roccaforte, with him on the brief),
Omaha, Nebraska, for Defendant-Appellee Union Pacific Railroad Company.

————————————————

Before **HARTZ**, **BRISCOE**, and **CARSON**, Circuit Judges.

————————————————

**CARSON**, Circuit Judge.

————————————————

When an employee provides notice to his employer of a disability and

expresses a desire for a reasonable accommodation, the employee and the employer

must engage in good-faith communications—what we have termed the interactive process. Once an employee triggers the interactive process, both the employee and the employer have an obligation to proceed in a reasonably interactive manner to determine the employee's limitations and consider whether the accommodations he requests—or perhaps others that might surface during the interactive process—would enable the employee to return to work.

Plaintiff Kelly Dansie sued Defendant Union Pacific Railroad Company for terminating his employment in violation of the Americans with Disabilities Act ("ADA") and the Family Medical Leave Act ("FMLA"). The district court granted summary judgment for Defendant on Plaintiff's ADA claim but allowed the case to proceed to trial on Plaintiff's FMLA claim. The jury then returned a verdict in Defendant's favor. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse in part and affirm in part. Plaintiff presented sufficient evidence for a jury to find that Defendant failed to engage in the ADA mandated interactive process. Given that evidence, we reverse summary judgment for Defendant on Plaintiff's ADA claim and remand it to the district court for a trial. But we affirm the verdict for Defendant on Plaintiff's FMLA claim.

I.

Defendant, a railroad company, schedules its conductors using an on-call system. A dispatcher calls a conductor when Defendant needs him or her for work. The conductor at the top of the list at the time of the shift receives the first call. If that conductor is unavailable, the dispatcher calls the next conductor on the list.

2

Under this system, Defendant requires the conductor to report for duty within two hours. Although Defendant runs its trains twenty-four hours a day, seven days a week, conductors are not on call during federally mandated rest periods. Defendant also provides conductors with paid vacation leave and paid personal leave under a union agreement. The union agreement also provides conductors with "reasonable" unpaid personal "layoffs"—where an on-call conductor schedules himself unavailable for work *and* he is called in for duty—and gives "significant consideration" to employees dealing with illness.

For the past twenty years, Plaintiff has lived and worked with an HIV-positive diagnosis. He has AIDS and testicular cancer—though his cancer is in remission. Because of his medical conditions, Plaintiff requires ongoing treatment. Despite regularly undergoing physically taxing medical procedures, Plaintiff believes his condition is stable and his symptoms are manageable.

In 2004, Plaintiff began working for Defendant as a conductor. As a conductor, Defendant expected Plaintiff to work "full time." And Plaintiff understood that his job required him to be physically present on trains and that his job was a "safety-sensitive" position. Defendant's written attendance policy measures "attendance" for on-call employees based on their availability. The policy provides that employees must "protect" their "job assignment[s] on a full-time basis" and defines "full time" as "being available to work your assignment . . . whenever it is scheduled." Defendant's attendance policy distinguished between two types of absences—agreement-provided compensated days and uncompensated layover days.

3

Defendant provided the "agreement-provided compensated days off" as a time for "personal business." As to layoffs, the policy mandates that the employee must notify his or her manager before the layoff "if possible." But notification and documentation alone would not excuse the employee's "responsibility" to protect his or her job.

When an employee does not work full time, the company identifies that employee by examining:

> A. Frequent, or pattern of, weekend layoffs.
> B. Frequent, or pattern of, holiday layoffs.[]
> C. Frequent personal layoffs.
> D. Frequent sick/sickness in family layoffs without current medical documentation provided in advance when possible.
> E. Lower availability/work days when compared to peers.
> F. Missed calls/No show/Tardy/Refusal.

If an employee's attendance record warrants, Defendant will investigate. Defendant's policy provides for two written notices of violation. Those written offenses stay on an employee's record for three years. A violation during the thirty-six months following the date of the second written notice leads to permanent dismissal.

Through 2014, Plaintiff used the FMLA to cover his absences. But in September of 2014, Defendant terminated Plaintiff for an alleged safety violation. Plaintiff appealed his termination to the Public Law Board—an administrative body that hears disputes between railroad companies and their employees—which overturned his termination but declined to award him backpay. Plaintiff returned to work in January 2016—more than one year after his termination. Because the

administrative body functionally commuted his termination to an unpaid suspension, Plaintiff temporarily lost his eligibility for FMLA leave.

Plaintiff repeatedly sought to use paid leave to cover his illness or medical appointments. But Defendant denied his requests. Defendant's records show it denied the requests because the "[c]urrent supply of crews does not meet demand." Thus Plaintiff would "lay off" and mark his status as "sick."

Eight months after reinstatement, Defendant charged Plaintiff with violating its attendance policy, alleging that Plaintiff had "laid off sick" six times in a ninety-day period. Plaintiff then requested what he believed to be a reasonable accommodation under the ADA. He asked Defendant's occupational health nurse for advice and the nurse referred him to Defendant's director of disability management in Nebraska, Terry Owens. After contacting Owens, Plaintiff and one of his physicians filled out Defendant's "Form E," titled "Medical Inquiry in Response to Request for Reasonable Accommodation." While filling out the form, Plaintiff sought clarification from Defendant about the definition of full-time employment. Plaintiff told Defendant that his doctor would need to see the definition of "full time" to fill out the paperwork and determine what would constitute a reasonable accommodation request. Defendant did not provide clarification.

Plaintiff's physicians submitted two Form E documents. The first explained that Plaintiff experienced fatigue and recovered slower from illnesses but that with sufficient rest, Plaintiff would be fully functional in his current position. Without a clarification on the attendance policy, Plaintiff's physician did not clearly understand

Plaintiff's schedule requirements and hesitated to recommend a specific amount of time off work.  After Owens told him the requested amount of time off was not specific enough, Plaintiff told Owens that he needed guidance.  Plaintiff and Owens had a follow up discussion in which they discussed that Plaintiff would need five days a month.  Plaintiff and his physician then completed a new Form E, which the physician estimated that Plaintiff would likely need five days off each month but cautioned that the estimate was subject to change because of the nature of Plaintiff's illness.  Plaintiff's physician again noted that Defendant's unclear scheduling and attendance requirements prevented him from providing an estimate with certainty.

The parties disagree about what happened to Plaintiff's accommodation request after he submitted his amended Form E.  Plaintiff asserts that a member of Defendant's disability-management team called him and told him that Defendant approved his request for an accommodation.  Plaintiff has no documentation from Defendant to support his claim.  Plaintiff believed that Defendant granted his request, so he suggested no other potential accommodations.

But Defendant's internal correspondence shows that Defendant would not accommodate up to five days off per month.  Terry Brown, superintendent of Defendant's Utah Transportation Department, explained in his deposition that he needed Plaintiff to show up to work and Plaintiff's request for five days off—on top of his normal days off—was too much time.  Brown also testified that the unpredictability of Plaintiff's request compounded the issue.  And Plaintiff testified that when he told his immediate supervisor that he believed Defendant granted his

6

accommodation request, his supervisor just shrugged and walked away. His supervisor testified that Plaintiff was on his "shit list" and that he believed Plaintiff was lazy because he failed to follow the attendance policy.

Before Defendant terminated him, Plaintiff testified that he asked for a dialogue among himself, his manager, and someone from the disability management office. Plaintiff requested that Owens intervene and explain what an ADA accommodation was to his supervisors. But Owens never did, and Plaintiff's supervisors charged him with attendance-policy violations three times. After his first violation, Defendant instructed Plaintiff "to mark up immediately and to remain available on a full time basis." Four months later, Defendant disciplined him on the same basis. Defendant expedited the third and final charge against Plaintiff. Shortly before the third charge, Plaintiff received a letter from Defendant's Health & Medical Services department informing him Defendant approved him for FMLA leave. Even so, Defendant terminated him one month later.

Plaintiff sued Defendant, alleging violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq., and the Family Medical Leave Act, 29 U.S.C. §§ 2601, et seq. The parties cross-moved for summary judgment. In an oral ruling, the district court denied Plaintiff's motion for summary judgment and granted Defendant's motion for summary judgment in part. The district court granted Defendant's motion concluding Plaintiff did not request a plausibly reasonable accommodation in his Form E request and thus failed to satisfy his prima facie burden on his ADA claim. The district court reasoned Plaintiff's proposed

accommodation failed to specify a duration for his accommodation. The district court also granted summary judgment on Plaintiff's claim that Defendant failed to engage in the interactive process required under the ADA. The district court did not reach whether Defendant engaged in the interactive process. It concluded that even if Defendant did not, Plaintiff failed to show that Defendant could reasonably accommodate his disability and therefore it had no duty to engage in the interactive process.

The district court allowed Plaintiff's FMLA interference claim to proceed to trial. Plaintiff contended at trial that Defendant made up a reason to terminate him and then expedited the termination process so that Plaintiff would be unable to work enough hours to qualify for FMLA leave. While deliberating, the jury submitted written questions. The district court did not answer the questions and instead directed the jury to consider the instructions as a whole. Plaintiff also requested that the district court provide supplemental instructions. But the district court declined to provide supplemental instructions and once again directed the jury's attention to the instructions as a whole. The jury returned a verdict in Defendant's favor. The district court denied Plaintiff's motion for a new trial. Plaintiff appealed.

After the summary judgment ruling, an arbitration board ordered Plaintiff reinstated. Plaintiff now works in a non-conductor, set-schedule position. Defendant agreed to allow Plaintiff to layoff as needed up to three days per month, with no requirement that he schedule the days in advance.

II.

Plaintiff challenges both the district court's dismissal of his ADA claim and the jury's verdict on his FMLA claim.  We first address Plaintiff's contention that Defendant failed to accommodate his disability.  Thus, we analyze whether the parties engaged in the interactive process before we address whether a reasonable accommodation existed that would have enabled Plaintiff to perform the essential functions of his job.

Under the ADA, a "covered entity" may not discriminate "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  And the statute defines "discriminate against a qualified individual on the basis of disability" to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]."  Id. § 12112(b)(5)(A).  To establish a prima facie failure-to-accommodate claim, Plaintiff had to show: (1) he was disabled; (2) he was otherwise qualified; (3) he requested a plausibly reasonable accommodation; and (4) Defendant refused to accommodate his

9

disability.[1]  Aubrey v. Koppes, 975 F.3d 995, 1005 (10th Cir. 2020) (citations

omitted).  Meeting this test "is not onerous."  Id. (citing Osborne v. Baxter

Healthcare Corp., 798 F.3d 1260, 1266 (10th Cir. 2015)).  If a plaintiff establishes a

prima facie claim, the burden shifts to the defendant to present evidence either

"conclusively rebutting one or more elements of plaintiff's prima facie case" or

"establishing an affirmative defense."  Id. (quoting Lincoln v. BNSF Ry., 900 F.3d

1166, 1204 (10th Cir. 2018)).  If the employer satisfies either, the employer is

---

[1] Plaintiff contends that our caselaw has competing "articulations" of the governing standard for a failure-to-accommodate claim.  We disagree, although we understand Plaintiff's position.  Plaintiff points to our opinion in Exby-Stolley v. Board of County Commissioners, 979 F.3d 784, 795 (10th Cir. 2020) (en banc), for the proposition that the prima facie case does not include that a plaintiff request a plausibly reasonable accommodation.  But that portion of Exby-Stolley discussed the "overarching features of ADA discrimination claims."  Id.  "'Discrimination' as used in the ADA encompasses three distinct types of discrimination": (1) disparate treatment; (2) failure to accommodate; and (3) disparate impact.  Davidson v. Am. Online, Inc., 337 F.3d 1179, 1188–89 (10th Cir. 2003) (citing 42 U.S.C. §§ 12112(b)(5)(A), 12112(b)(6)).  Earlier in Exby-Stolley, we mentioned the elements of a failure-to-accommodate claim, noting that our "controlling precedents" set forth that a plaintiff show that he "requested a plausibly reasonable accommodation."  979 F.3d at 792 (quotation omitted).  Indeed, our caselaw distinguishes the elements of an ADA disparate-treatment claim, which does not require a showing of a request for a plausibly reasonable accommodation, and the elements of an ADA failure-to-accommodate claim, which does.  See Lincoln. 900 F.3d at 1192, 1204 (citations omitted) (discussing the differing elements of an ADA disparate-treatment claim and an ADA failure-to-accommodate claim).  But we have not always clearly articulated this standard.  We first articulated the three-prong test Plaintiff desires in White v. York Int'l Corp., 45 F.3d 357, 360–61 (10th Cir. 1995) (citations omitted).  Although we did not incorporate the requirement that a plaintiff request a plausibly reasonable accommodation as an enumerated element, we still required that the plaintiff present evidence that an accommodation was possible.  Id. at 363 ("White has produced no evidence that accommodation was possible.  Thus, he has failed to establish an essential element of his case: that he is a 'qualified person with a disability,' entitled to the protections of the ADA.").

entitled to summary judgment unless the employee presents evidence establishing a genuine dispute about the affirmative defenses or rehabilitates any challenged elements of her prima facie case sufficiently to establish at least a genuine dispute of material fact. Id. at 1005–06 (quoting Punt v. Kelly Servs., 862 F.3d 1040, 1050 (10th Cir. 2017)). We review de novo a district court's grant of summary judgment. Petersen v. Raymond Corp., 994 F.3d 1224, 1226 (10th Cir. 2021) (citing Allen v. Minnstar, Inc., 8 F.3d 1470, 1476 (10th Cir. 1993)).

At issue in this appeal is the third element of the prima facie case: whether Plaintiff requested a plausibly reasonable accommodation. "Reasonable accommodation" means "those accommodations which presently, or in the near future, enable the employee to perform the essential functions of his job." Aubrey, 975 F.3d at 1007 (quoting Lincoln, 900 F.3d at 1205). The reasonableness determination depends "on the facts of each case taking into consideration the particular individual's disability and employment position." Id. (quoting Punt, 862 F.3d at 1050).

A.

We require an employer and employee to engage in what we call "the interactive process" to determine an appropriate position. Albert v. Smith's Food & Drug Ctrs., Inc., 356 F.3d 1242, 1252 (10th Cir. 2004) (citing Smith v. Midland Brake, Inc., 180 F.3d 1154, 1171 (10th Cir. 1999) (en banc)). This interactive process contemplates "an affirmative obligation to undertake a good faith back-and-forth process between the employer and the employee, with the goal of identifying

11

the employee's precise limitations and attempting to find a reasonable accommodation for those limitations." Aubrey, 975 F.3d at 1009 (citations omitted). This process begins with the employee providing notice to the employer of his disability and any resulting limitations. Albert, 356 F.3d at 1252 (citation omitted). This notice triggers the employer's responsibility to engage in the interactive process where both parties must communicate in good-faith. Id. (citation omitted). This good-faith communication "is imperative because each side will possess different information, all of which is critical to determining whether there is a reasonable accommodation that might permit the disabled employee to perform the essential functions of [his] job." Aubrey, 975 F.3d at 1007. A workable accommodation may not exist, "but the ADA mandates that the employer work with the employee to try to find one." Id. at 1009 (citation omitted). Plaintiff triggered Defendant's responsibility to engage in the interactive process when he informed both his direct supervisor and Defendant's director of disability management that he wanted an accommodation for his disability.

Based on the record evidence, a reasonable jury could find that Defendant failed to engage in the interactive process when assessing whether a reasonable accommodation existed that would have enabled Plaintiff to perform the essential functions of his job. A jury could conclude that Defendant made no effort to discover exactly what Plaintiff's limitations were or to explore with Plaintiff whether any accommodations were available to him. Plaintiff admits he did not immediately come up with an accommodation that Defendant was willing to implement. But

12

Plaintiff says that communications broke down when Defendant refused to clarify its definition of "full time" employment. Plaintiff produced email correspondence in which he asked for guidance to help formulate an appropriate request. The email shows that Plaintiff struggled to locate a written policy for transportation employees explaining full-time employment. Plaintiff also says Defendant obstructed the process by telling him that it approved his accommodation. Plaintiff testified that when he told his direct supervisor that Defendant approved his accommodation, his supervisor shrugged and walked away. When Plaintiff tried to discuss his medical issues with his supervisor by email, his supervisor responded he only wanted to know what days Plaintiff was unavailable for work, and not the details about his medical treatments.

Just as an employee may not terminate the interactive process quickly to create liability, so too an employer may not cut off the interactive process so early that the parties cannot find a position to reasonably accommodate the employee. See Albert, 356 F.3d at 1253 (citing Davoll v. Webb, 194 F.3d 1116, 1133 (10th Cir. 1999)) ("Neither party may create or destroy liability by causing a breakdown of the interactive process."). Here, a jury could conclude that Defendant engaged in the interactive process. But Plaintiff has presented sufficient evidence to create a genuine issue of material fact on whether Defendant fulfilled its responsibilities

during the interactive process to work with Plaintiff to identify the type of position that would reasonably accommodate his limitations.[2]

## B.

We now turn to whether a reasonable accommodation existed that would have enabled Plaintiff to perform the essential functions of his job. This presents a mixed question of law and fact. Aubrey, 975 F.3d at 1010 (citation omitted). We prescribe a burden-shifting formula to determine whether an accommodation is reasonable. Id. (citation omitted). First, the employee must show that an accommodation appears reasonable on its face. Id. (quotation omitted). An accommodation is not reasonable on its face if the proposed accommodation would not enable the employee to perform the essential function at issue. Id. (quotation omitted). Second, if the employee meets this initial burden, "the burden of production then shifts to the employer to present evidence of its inability to accommodate." Id. (quotation omitted). At that point, the employer must show special circumstances that prove undue hardship in the particular situation. Id. (quotation omitted). Third, if the employer presents such evidence, then

---

[2] Defendant contends that even if it did not engage in the interactive process, Plaintiff still cannot prevail on summary judgment because failure to engage in the interactive process is not a standalone claim. True enough—"an employee cannot maintain a failure to accommodate claim based solely on an employer's failure to engage in the interactive process." Lincoln, 900 F.3d at 1207 n.29 (citations omitted). But "an employer's failure to engage in the interactive process will often make it difficult to resolve a case for the employer on summary judgment on this ground." Aubrey, 975 F.3d at 1010 (quotation omitted). And this makes sense. When an employer does not engage in the interactive process, that employer will unlikely be able to establish the absence of a disputed fact as to the existence of a reasonable accommodation. Id. (citation omitted).

the burden shifts back to the employee who must "com[e] forward with evidence concerning [his] individual capabilities and suggestions for possible accommodations to rebut the employer's evidence." Id. (quotation omitted). Plaintiff presents three plausibly reasonable accommodations to satisfy his burden to establish a prima facie failure-to-accommodate claim: allowing him more time off from work; allowing him to use his earned paid leave days to cover his absences until he qualified for FMLA leave; and reassigning him to an available regular-schedule position.

Plaintiff first requested more time off from work. A leave request may lead to a reasonable accommodation. Id. (citations omitted). But an employer does not have to retain a disabled employee on unpaid leave indefinitely or for excessive time. Id. at 1011 (citations omitted). Based on the language Plaintiff submitted in his two Form E requests—the form Defendant designated for employee accommodation requests—the district court considered Plaintiff to be requesting an indefinite amount of time off from work, both in amount of days per month and in duration of the request. But we believe a jury could find that Plaintiff was not asking for an indefinite amount of time off from work.

Defendant returned Plaintiff's first Form E request because it did not provide the specific amount of time he needed off. Plaintiff then submitted a second form, where he requested Defendant allow him to take time to rest and recover after treatment, illness, or to attend appointments. In that second form, Plaintiff estimated he would incur, on average, five days of incapacity days per month. But the form also suggested that the time needed per month could change without notice.

15

Defendant asserts Plaintiff's second Form E request left Plaintiff's potential layoff time limited only by his own discretion. Defendant also argues Plaintiff did not specify the duration for the accommodation. Plaintiff, on the other hand, presented evidence of a voicemail that he contends proves he told Defendant that he needed the accommodation only until he became eligible for FMLA.[3] And another email in the record among Defendant's employees says that Plaintiff's "doctor supplied information to HMS that he needs *up to five days per month* of unforeseen leave." Appellant's App., Vol. III at 877 (emphasis added).[4]

Plaintiff presented evidence that he requested up to five days off per month for a specific period of time—until he could obtain FMLA leave—and that evidence at least created a genuine issue of material fact about the open-endedness of his

---

[3] In its oral ruling, the district court mentioned the telephone recording between Defendant's employees discussing the need for Plaintiff to have an accommodation until he qualified for FMLA leave. But the district court said it would not consider it for purposes of Plaintiff's summary-judgment motion because Plaintiff did not rely on that evidence in his proposed facts. The record, however, reveals that Plaintiff cited the voicemail in his motion for summary judgment. Plaintiff wrote: "Union Pacific may argue that Brown denied the request also because it was indefinite in time; however, Brown had been told that Dansie was requesting the accommodation just until he had enough hours to inarguably qualify for FMLA, which was seven months."

[4] As much as the district court believed it could not consider evidence outside Form E, it was incorrect. We have said that "we are not persuaded there is any reason to constrain the types of evidence an employee may use to present a failure-to-accommodate case, subject of course to the rules of evidence." Punt, 862 F.3d at 1049. And the other evidence provides information about the duration of Plaintiff's impairment under his accommodation request.

request.[5]  From this evidence, a jury could find that Plaintiff requested a plausibly reasonable accommodation that would have permitted him to return, in the near future, to performing the essential functions of his job and that the accommodation did not present an undue hardship to Defendant.  That evidence is sufficient for Plaintiff's failure-to-accommodate claim to survive summary judgment and let a jury decide these issues.[6]

---

[5] Defendant contends that even if Plaintiff sought an ADA accommodation until he became FMLA eligible, that reason did not render his accommodation request reasonable because he cannot use the ADA to circumvent FMLA limitations—an argument it failed to raise below.  Defendant asserts that if employees could use accommodations under the ADA as a bridge to FMLA, such action would nullify the FMLA's twelve-week limit on how much unpaid FMLA leave an employee may take.  Although Plaintiff uses the date at which he became eligible for the FMLA as a marker for when his accommodation would end, Plaintiff never asserted that the requested five days off constituted FMLA leave prior to his eligibility for such leave.  As a disabled individual, the ADA entitled Plaintiff to receive accommodations with no waiting period.  And we have held that "[i]t is well-settled that a request for leave may lead to a 'reasonable' accommodation."  Punt, 862 F.3d at 1051 (citation omitted).  Thus, Plaintiff's request for leave until he is eligible for FMLA sets the duration on his leave request, rather than an attempt to end-run the FMLA.  And the Code of Federal Regulations contemplates that an employer may allow an employee to take non-FMLA leave before the employee meets the twelve-month eligibility requirement, and in that event, "any portion of the leave taken for an FMLA-qualifying reason after the employee meets the eligibility requirement would be FMLA leave."  29 C.F.R. § 825.110(d).

[6] Defendant also suggests that Plaintiff's argument fails under our case law.  We disagree.  Defendant compares this case to that of a receptionist diagnosed with breast cancer that planned not to come into work for an entire week followed by sporadic absences.  Punt, 862, F.3d at 1043, 1050.  But Plaintiff did not work a normal, set forty-hour-per-week schedule.  Rather, he worked a 24-7-365 on-call schedule.  Plaintiff, when requesting five days off per month, conveyed to Defendant that he had availability twenty-five days per month, twenty-four hours per day—still an average of 150 hours per week.  That Plaintiff's job did not have a set schedule distinguishes the situation presented here from Punt.

17

Plaintiff also asserts Defendant could have accommodated him by allowing him to use his earned paid-leave days to cover his absences until he qualified for FMLA leave. "For purposes of the ADA, 'reasonable accommodations' may comprise . . . 'permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment . . . .'" Wilson v. Dollar Gen. Corp., 717 F.3d 337, 344–45 (4th Cir. 2013) (quoting 29 C.F.R. Pt. 1630, App. § 1630.2(o) (2011)). So a jury could find that Plaintiff's accrued leave request was a plausibly reasonable accommodation that would have enabled Plaintiff to perform the essential functions of his job and could reject Defendant's assertion that it could not provide that accommodation.

Plaintiff finally suggests that had Defendant engaged in the interactive process that Defendant could have reassigned him to an available regular-schedule position. "The ADA itself expressly recognizes reassignment can be a reasonable accommodation." Aubrey, 975 F.3d at 1012 (citing 42 U.S.C. § 12111(9)(B); Lincoln, 900 F.3d at 1204–05). If an employee cannot return to a previous job, reassignment to a vacant position "can be a reasonable accommodation and is particularly amenable to consideration during a genuine interactive process between the employee and employer." Id. (citations omitted). In fact, Plaintiff eventually transferred to a regular-schedule position. This is sufficient to meet his prima facie

18

burden.[7]  Thus, Plaintiff has sufficiently established three plausibly reasonable accommodations that a jury could find would have permitted him to return to performing the essential functions of his job.

That shifts the burden to Defendant to present evidence either conclusively rebutting one or more elements of Plaintiff's prima facie case or establishing an affirmative defense.  Defendant counters that the evidence shows that Plaintiff's request was not reasonable because Plaintiff did not limit his request to a specific duration.  Rather, Plaintiff requested that Defendant allow him to miss work on an as-needed basis for an indefinite time.  And Defendant presented evidence that Plaintiff's job required his physical presence at essentially all times.  That, however, presents a fact question for a jury.

Plaintiff then has the burden to come forward with evidence about his individual capabilities and suggestions for possible accommodations to rebut the employer's evidence.  First, as mentioned above, when an employer does not engage in the interactive process, that employer will unlikely be able to establish the absence of a disputed fact as to the existence of a reasonable accommodation.  Id. at 1010

---

[7] Defendant argues that Owens continued to participate in the interactive process, offering to help Plaintiff find a different job within the company that was compatible with his medical needs but that Plaintiff declined this offer.  Plaintiff offers evidence of Owens's deposition testimony that she could not remember if she spoke with Plaintiff about finding alternative employment.  Plaintiff also argues that the voicemail used to support this suggestion took place eight months after Plaintiff first requested accommodations and on the eve of his final disciplinary hearing.  How much Defendant engaged in the interactive process and whether Defendant could have reassigned him to an available regular-schedule position presents a fact question for the jury.

(citation omitted).  Because a jury could conclude Defendant did not fulfill its responsibilities during the interactive process to work with Plaintiff to identify the type of position that would reasonably accommodate his limitations, a fact question remains whether a reasonable accommodation would have been possible had Defendant engaged in the interactive process.  Second, Plaintiff provided evidence sufficient for a jury to conclude Defendant knew that his request for more time off was for a specific duration (until he could obtain FMLA leave) and for a specific amount of time (up to five days off per month).  Plaintiff also provided evidence that Defendant accommodated him on a similar arrangement when he had access to FMLA leave and that Defendant could accommodate him in a regular-schedule position.

In sum, Plaintiff presented sufficient evidence to establish a prima facie failure-to-accommodate claim.  Plaintiff is disabled, but otherwise qualified.  A jury could conclude his requests for up to five days per month to lay off until he qualified for FMLA, use of paid leave, or reassignment to a scheduled position were plausibly reasonable accommodations.  And Defendant refused to accommodate Plaintiff's disability.  That shifted the burden to Defendant.  Defendant presented evidence to rebut Plaintiff's prima facie case, asserting that the evidence showed Plaintiff requested that Defendant allow him to miss work on an as-needed basis for an indefinite time.  Plaintiff's evidence can establish at least a genuine dispute of material fact to enable his failure-to-accommodate claim to survive summary

20

judgment.  The district court therefore erred in granting Defendant summary

judgment on this claim.

III.

Plaintiff next contends that the district court abused its discretion by refusing

to give supplemental jury instructions, and then, for the same reason, abused its

discretion by denying Plaintiff's motion for a new trial.  "We review the jury

instructions de novo to determine whether, as a whole, the instructions correctly state

the governing law and provide the jury with an ample understanding of the issues and

applicable standards."  United States v. Alcorn, 329 F.3d 759, 764 (10th Cir. 2003)

(quoting United States v. Fredette, 315 F.3d 1235, 1240 (10th Cir. 2003)).  And

"while we review de novo the jury instructions as a whole, 'the district court's

decision to give a particular jury instruction is reviewed for abuse of discretion.'"  Id.

(quoting Fredette, 315 F.3d at 1241).  "This court [also] reviews a district court's

actions in response to questions from the jury, as well as supplemental instructions

given to the jury, for an abuse of discretion."  United States v. Olea-Monarez, 908

F.3d 636, 639 (10th Cir. 2018) (citing Minnstar, Inc., 97 F.3d at 1372).  "A district

court abuses its discretion when its decision is 'arbitrary, capricious or whimsical' or

falls outside 'the bounds of permissible choice in the circumstances.'"  Id.  (quoting

United States v. Mares, 441 F.3d 1152, 1156 (10th Cir. 2006)).  We also review the

district court's denial of a motion for a new trial for abuse of discretion.  Henning v.

Union Pac. R.R. Co., 530 F.3d 1206, 1216 (10th Cir. 2008) (citing United States v.

Gwathney, 465 F.3d 1133, 1144 (10th Cir. 2006)).  The district court cannot grant a

21

motion for a new trial "unless the error was prejudicial and affects the party's substantial rights." Id. (citing Fed. R. Civ. P. 61).

We review whether the district court gave an erroneous instruction "on a case-by-case basis with a view towards determining whether the instruction had a coercive effect on the jury." Alcorn, 329 F.3d at 765 (quoting United States v. Rodriguez-Mejia, 20 F.3d 1090, 1091 (10th Cir. 1994)). "Some of the factors we consider in making this determination include: (1) the language of the instruction, (2) whether the instruction is presented with other instructions, (3) the timing of the instruction, and (4) the length of the jury's subsequent deliberations." Id. (quoting Gilbert v. Mullin, 302 F.3d 1166, 1173 (10th Cir. 2002)). "This court considers the instructions as a whole in determining whether the jury was provided with sufficient understanding of the applicable standards." United States v. Frias, 893 F.3d 1268, 1275 (10th Cir. 2018) (citing United States v. Zimmerman, 943 F.2d 1204, 1213 (10th Cir. 1991)).

"When a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy." Olea-Monarez, 908 F.3d at 639 (quoting Bollenbach v. United States, 326 U.S. 607, 612–13, 66 S. Ct. 402 (1946)) (citing Zimmerman, 943 F.2d at 1213). "[A] district judge has a duty to guide the jury toward an intelligent understanding of the legal and factual issues it must resolve, particularly when the jury asks a question revealing its confusion over the central issue of a case." Id. (quoting Shultz v. Rice, 809 F.2d 643, 650 (10th Cir. 1986)).

22

Plaintiff contends the district court erred by refusing to give supplemental jury instructions and that the failure to do so prejudiced him.  Jury Instruction Number 12 instructed the jury on the FMLA generally as follows:

> The Family and Medical Leave Act provides eligible employees the right to take a total of twelve weeks of unpaid leave per year (1) to care for a newborn son or daughter, (2) to care for a child placed with the employee through adoption or foster care, (3) to care for an immediate family member with a "serious health condition," or (4) to care for the employee's own "serious health condition" that renders the employee unable to perform his or her work functions.  After the period of qualified leave expires, the employee generally is entitled to be reinstated to the former position or an equivalent one with the same benefits and terms of employment that existed before the employee took the leave.

> To insure the availability of these guarantees, the FMLA declares that it is unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided by the FMLA.

Jury Instruction Number 13 then instructed the jury about the essential elements of Plaintiff's FMLA interference claim as follows:

> Ordinarily, a plaintiff asserting a claim for FMLA interference would bear an initial burden of proof on certain matters.  In this case, however, the only question for you to decide is whether Union Pacific proved by a preponderance of the evidence that its termination of Dansie's employment was unrelated to the exercise or attempted exercise of his FMLA rights—in other words, that it would have discharged Dansie regardless of his request for FMLA leave.

> Your verdict must be for Union Pacific if it proves by a preponderance of the evidence that it would have discharged Dansie regardless of his request for FMLA leave.

The jury submitted written questions during deliberations.  First, the jury asked, "Is FMLA retroactive, i.e. when Mr. Dansie received FMLA approval . . . for April 5, 2017, did the FMLA cover January 2017 to April 2017?  How back [sic] does it reach and doe [sic] it excuse back date absences?"  The district court

23

responded that it could "only say that you have been provided the law applicable to the issues you must decide. I direct your attention to the Instructions as a whole." The jury also asked, "As to the instruction on pag [sic] 12, paragraph two, does the Law 'deny the exercise of or the attempt to exercise' apply to persons who have FMLA only, or also people trying to obtain FMLA? This is crucial for us to understand whom this applies to, as you know." Plaintiff requested the district court instruct the jury that protected activity includes the attempt to work enough hours to qualify for FMLA coverage. But the district court declined to provide the jury with supplemental instructions and once again directed the jury's attention to the Instructions as a whole.

The district court did not abuse its discretion in declining to give the supplemental instructions. The instructions set forth the law the jury was to apply to determine whether Defendant had shown by a preponderance of the evidence that it would have discharged Plaintiff regardless of his request for FMLA leave. The jury determined that it would have. And Plaintiff's entitlement to FMLA leave—the focus of the jury's question—was not at issue. The instructions as a whole and the verdict form made clear that the jury need not have to answer whether Plaintiff was entitled to FMLA leave. Thus, the answer to that question was not central to the case.[8] Because the district court referred the jury back to the instructions as a whole,

---

[8] The dissent contends that the district court abused its discretion in referring the jury back to the original instructions because the original instructions could not have resolved the jury's question. Maybe so. But the jury's question did not reveal a

24

which accurately depicted the law at issue, the district court did not abuse its discretion in refusing to supplement the jury instructions and consequently denying Plaintiff's motion for a new trial.[9] Alcorn, 329 F.3d at 766 ("Given the adequacy of the instructions, the district court did not err in referring the jury to them . . . .").

IV.

We REVERSE the district court's decision to grant Defendant summary judgment on Plaintiff's ADA failure-to-accommodate claim and REMAND to the district court for further proceedings. We AFFIRM the district court's decision to decline to give supplemental jury instructions and to deny Plaintiff's motion for a new trial.

---

genuine confusion about a *central issue* in the case. Commercial Union Assurance Companies v. Sears, Roebuck & Co., 716 F.2d 606, 610 (10th Cir. 1983). The jury did not have to know the answer to its questions in order to decide what was at issue. We "usually defer to the trial judge's discretion regarding matters of trial conduct." Id. And we cannot say that the district judge's decision was arbitrary, capricious or whimsical or fell outside the bounds of permissible choice in the circumstances.

[9] The dissent posits that the district court may have prejudiced Plaintiff because, in reaching its verdict, the jury may have decided that Defendant did not interfere with Plaintiff's FMLA rights—an issue the district court previously decided as a matter of law. Juries do not always know every legal ruling that has occurred prior to trial. Furthermore, the dissent's position would require us "to speculate on the deliberative process of a jury, an activity we are loath to undertake." Mayes v. Gibson, 210 F.3d 1284, 1291 (10th Cir. 2000).

No. 20-4054, *Dansie v. Union Pacific Railroad Co.*
**BRISCOE**, Senior Circuit Judge, concurring in part and dissenting in part.

I concur in part and dissent in part. I agree with the majority that the district court erred in granting summary judgment in favor of Union Pacific Railroad Company (Union Pacific) with respect to Dansie's claim under the Americans with Disabilities Act, and therefore I join Parts I and II of the majority's opinion. I disagree, however, with the majority's decision in Part III of the opinion to affirm the district court's refusal to give supplemental jury instructions regarding Dansie's claim under the Family and Medical Leave Act (FMLA) and the district court's denial of Dansie's motion for a new trial on the FMLA claim. For the reasons outlined in greater detail below, I conclude that the district court erred in both regards and, as a result, I would reverse and remand Dansie's FMLA claim for a new trial.

*Standards of review*

As noted by the majority, we review for an abuse of discretion both the district court's refusal to provide supplemental instructions and the district court's denial of Dansie's motion for new trial. *Harte v. Bd. of Commrs. of Johnson Cnty.*, 940 F.3d 498, 519 (10th Cir. 2019) (motion for new trial); *United States v. Olea-Monarez*, 908 F.3d 636, 639 (10th Cir. 2018) (supplemental instructions).

"When a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy." *Bollenbach v. United States*, 326 U.S. 607, 612-13 (1946). "A district judge has a duty to guide the jury toward an intelligent understanding of the legal and factual issues it must resolve, particularly when the jury asks a question revealing its

confusion over the central issue of a case." *Olea-Monarez*, 908 F.3d at 639 (quotation marks and brackets omitted). In determining whether a district court abused its discretion in deciding whether or not to provide the jury with supplemental instructions, we "review[] the jury instructions as a whole to determine whether they correctly state[d] the governing law and provide[d] an ample understanding of the issues and the applicable standards." *United States v. Williams*, 403 F.3d 1188, 1197 (10th Cir. 2005) (quotation marks omitted).

*Facts relevant to the FMLA claim*

It is undisputed that on or about April 3, 2017, Dansie accumulated the requisite 1,250 hours-worked to qualify for FMLA leave. Dansie immediately requested and received approval from Union Pacific's Health and Medical Services Department for "intermittent" FMLA leave for the period from April 5, 2017, through April 5, 2018.

On May 5, 2017, Mike Warren, Dansie's direct supervisor (who allegedly disliked Dansie and was interested in seeing him terminated from with Union Pacific), charged Dansie with a third violation of Union Pacific's attendance policy. Warren's letter to Dansie informing him of the charge stated that Dansie "failed to protect [his] employment on a full time basis through frequent or pattern layoffs and/or failure to report for service between 02/11/2017 and 04/23/2017." Aplt. App., Vol. 3 at 639. In other words, the alleged pattern of layoffs and/or failures to report occurred during a time period that largely preceded Dansie accumulating the requisite hours-worked to qualify for FMLA leave.

2

Dansie's complaint in this case alleged, in pertinent part, that Union Pacific violated the FMLA by "unlawfully interfer[ing] with [his] exercise of, and attempts to exercise, his rights under the FMLA." *Id*., Vol. 1 at 18. The parties both moved for summary judgment on the FMLA claim, but the district court denied those motions. In doing so, the district court noted that "[t]o establish a prima facie interference claim an employe[e] must show, Number 1, they were entitled to FMLA leave; Number 2, that some adverse action by the employer interfered with their right to take FMLA leave; and Number 3, that the employer's action was related to the exercises or attempted exercise of FMLA rights." *Id*., Vol. V at 1305. The district court concluded that "[t]he first two elements of Dansie's interference claim [we]re not in dispute, and for that reason the burden rest[ed] with Union Pacific to demonstrate that its termination of Dansie was unrelated to his exercise of his FMLA rights." *Id*. at 1306. As to that issue, the district court concluded that genuine issues of material fact existed. *Id*. at 1308.

The case proceeded to a three-day jury trial on the issue of whether "Union Pacific interfered with Dansie's exercise of his rights under the [FMLA] by terminating his employment." *Id*. at 1371 (Jury Instruction No. 11). "Dansie's theory of the case was that . . . Union Pacific . . . manufactured a reason to terminate him because it did not want him to work enough hours to qualify for protection under the [FMLA], after which it knew it would be unable to prohibit him from missing work as necessitated by his disabilities." Aplt. App., Vol. V at 1386. For example, during closing arguments, Dansie's counsel argued that "[w]hen . . . [Terry] Brown[, the superintendent who

3

managed both Dansie and Warren,] learned that despite his best efforts . . . Dansie was going to qualify for FMLA anyway, Union Pacific expedited the termination process."[1]

*Id*. at 1467.

At the close of the evidence, the district court gave the following substantive instructions to the jury:

INSTRUCTION NO. 11
Nature of the Claim

This case arises under the Family and Medical Leave Act (FMLA). This federal law entitles eligible employees to leaves of absence for specified family and medical reasons. The Plaintiff, Kelly Dansie, asserts one claim against the Defendant, Union Pacific Railroad Company: a claim that Union Pacific interfered with Dansie's exercise of his rights under the Family and Medical Leave Act (FMLA) by terminating his employment. Union Pacific denies Dansie's claim and asserts that it terminated Dansie's employment because he had excessive absences in violation of Union Pacific's attendance policy.

*Id*. at 1371.

---

[1] According to the record, Brown was the individual who allegedly denied Dansie's request for accommodation in the fall of 2016, and was also the individual who ultimately terminated Dansie's employment with Union Pacific. In February of 2017, Brown sent an email to Union Pacific's Equal Employment Opportunity department stating that he could not accommodate Dansie's request to be allowed up to five layoffs per month. In that same email, Brown stated: "If [Dansie] is eligible for FMLA [leave] that would complicate this but at this point I don't know that he is? * * * Sometimes these cases evolve but based on the prior status discipline would be an option if . . . he is not covered by FMLA." Aplt. App., Vol. 3 at 877.

INSTRUCTION NO. 12
FMLA Generally

The Family and Medical Leave Act provides eligible employees the right to take a total of twelve weeks of unpaid leave per year (1) to care for a newborn son or daughter, (2) to care for a child placed with the employee through adoption or foster care, (3) to care for an immediate family member with a "serious health condition," or (4) to care for the employee's own "serious health condition" that renders the employee unable to perform his or her work functions. After the period of qualified leave expires, the employee generally is entitled to be reinstated to the former position or an equivalent one with the same benefits and terms of employment that existed before the employee took the leave.

To insure the availability of these guarantees, the FMLA declares that it is unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided by the FMLA.

*Id.* at 1372.

INSTRUCTION NO. 13
Essential Elements of Plaintiff's Claim

Ordinarily, a plaintiff asserting a claim for FMLA interference would bear an initial burden of proof on certain matters.  In this case, however, the only question for you to decide is whether Union Pacific proved by a preponderance of the evidence that its termination of Dansie's employment was unrelated to the exercise or attempted exercise of his FMLA rights—in other words, that it would have discharged Dansie regardless of his request for FMLA leave.

Your verdict must be for Union Pacific if it proves by a preponderance of the evidence that it would have discharged Dansie regardless of his request for FMLA leave.

*Id.* at 1373.

During its deliberations, the jury sent several notes to the district court, at least two

of which evidenced its need for more specific direction than was provided by the district

5

court's instructions.  One of those notes asked: "Is FMLA retroactive, i.e. [sic] when Mr.

Dansie recieved [sic] FMLA approval Exhibit 05 for April 5, 2017, did the FMLA cover

January 2017 to April 2017?  How back [sic] does it reach and doe [sic] it excuse back

date absenses [sic]?" *Id*. at 1378.  The district court declined to directly answer this

question and instead responded by telling the jury, by way of a written response: "With

respect to your question concerning Exhibit 5, and retroactivity of FMLA approval: The

court can only say that you have been provided the law applicable to the issues you must

decide.  I direct your attention to the Instructions as a whole." *Id*. at 1380.

After receiving the district court's response and apparently examining the original

instructions, the jury sent another note asking the district court: "As to the instruction on

pag [sic] 12, paragraph two, does the Law 'deny the exercise of or the attempt to

exercise' apply to persons who have FMLA only, or also people trying to obtain FMLA?

This is crucial for us to understand whom this applies to, as you know." *Id*. at 1382.  The

district court, over the objection of Dansie's counsel, responded to this note as follows:

"With respect to your question concerning Jury Instruction No. 12: The court cannot

elaborate on the law provided in your Instructions.  I can only say that you have been

provided the law applicable to the issues you must decide.  I direct your attention to the

Instructions as a whole." *Id*. at 1383.

Ultimately, the jury answered "YES" to the sole question on the verdict form:

"Has Defendant Union Pacific proved by a preponderance of the evidence that its

6

termination of Plaintiff Kelly Dansie's employment was unrelated to the exercise or attempted exercise of his FMLA rights?" *Id*. at 1384.

Dansie filed a motion for new trial arguing that the district court committed reversible error by failing to respond to the jury's second question.   The district court denied that motion with a written order issued on May 4, 2020.

*Analysis*

The FMLA entitles qualified employees to take up to twelve weeks of leave during a twelve-month period for any one of several reasons, including "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).  An FMLA interference claim is based on an employer's denial of an employee's FMLA rights.  *See Campbell v. Gambro Healthcare, Inc*., 478 F.3d 1282, 1287 (10th Cir. 2007); *see also* 29 U.S.C. § 2615(a)(1) (providing that it is "unlawful for any employer to interfere with, restrain, or deny the exercise" of FMLA rights).  To establish an interference claim, an employee must show: "(1) that she was entitled to FMLA leave, (2) that some adverse action by the employer interfered with her right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of her FMLA rights."  *Campbell*, 478 F.3d at 1287 (brackets and internal quotation marks omitted).  An employer can defeat an FMLA interference claim "by showing that the employee would have been terminated anyway, i.e. regardless of the request for FMLA leave."  *Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1227 (10th Cir. 2012).

7

As noted, the district court's instructions to the jury in this case did not list the three elements that an employee must prove to establish an interference claim. Nor did the district court's instructions inform the jury that the district court had previously ruled in Dansie's favor on the first two elements of his interference claim. Instead, Instruction No. 13's beginning two sentences merely alluded to the existence of other requirements, but did not specifically outline them:

> Ordinarily, a plaintiff asserting a claim for FMLA interference would bear an initial burden of proof on certain matters." In this case, however, the only question for you to decide is whether Union Pacific proved by a preponderance of the evidence that its termination of Dansie's employment was unrelated to the exercise or attempted exercise of his FMLA rights—in other words, that it would have discharged Dansie regardless of his request for FMLA leave.

Aplt. App., Vol. V at 1373. Thus, the jury did not know that Dansie was required to establish that he was entitled to FMLA leave in order to prevail on his FMLA interference claim, or that the district court had decided this issue as a matter of law in Dansie's favor.[2] And it was this issue that the jury appeared to be concerned with in its second note to the district court, i.e., whether the FMLA applied to Dansie since he was, in the jury's words, "trying to obtain it" during part of the time period in question. To be sure, the district court's instructions did not ask the jury to decide this issue. But, as the jury's note to the district court indicated, the jury's reading of Instruction No. 12 left it in

---

[2] Nor did the jury know that the district court had also found as a matter of law that Union Pacific's termination of Dansie had interfered with Dansie's ability to exercise his FMLA rights.

8

doubt as to whether the FMLA applied to Dansie, and therefore whether Union Pacific could interfere with Dansie's FMLA rights by terminating him for layoffs and failures to report that occurred prior to him accumulating the requisite hours-worked to qualify for FMLA leave.

In my view, the jury's questions strongly suggest that the jury was well aware of the date upon which Dansie became eligible for FMLA leave (April 3, 2017), and were confused as to whether it was permissible for Union Pacific to punish Dansie, i.e., find him in violation of its attendance policy and in turn terminate his employment, based upon layoffs or failures to report that occurred prior to him becoming formally eligible for FMLA leave on April 3, 2017.[3]  Contrary to the majority's suggestion, this confusion went to the central issue the jury was tasked with deciding, i.e., whether Union Pacific

---

[3] The majority seems to suggest that it is impermissible for us to review the notes sent by the jury to the district court and to attempt to determine what the jury may have been confused about.  But Supreme Court and Tenth Circuit precedent clearly hold otherwise.  *See Bollenbach*, 326 U.S. at 612–13; *Olea-Monarez*, 908 F.3d at 639.  Notably, the only case that the majority cites in support of its position, *Mayes v. Gibson*, 210 F.3d 1284 (10th Cir. 2000), is inapposite.  *Mayes* was a habeas corpus action filed by an Oklahoma state defendant who was convicted of murder and sentenced to death.  One of the arguments that the defendant in *Mayes* made was that his trial counsel was ineffective for failing to conduct any investigation or present mitigation evidence during the penalty phase of the trial.  In rejecting that argument, this court stated: "Determining whether there is a reasonable probability that had the jury heard this mitigation evidence the outcome of [the defendant's] sentencing could have been different requires us to speculate on the deliberative process of a jury, an activity we are loath to undertake." 210 F.3d at 1291.  That is a far different situation than the one at issue now before us, where we have notes sent by the jury to the district court during the course of its deliberations, and thus clear indications as to what the jury was thinking.

proved that its termination of Dansie's employment was unrelated to the exercise or attempted exercise of his FMLA rights.

Consequently, the proper course in my view would have been for the district court to provide the jury with a supplemental instruction addressing the jury's question regarding Instruction No. 12.[4] That supplemental instruction should have, in my view, noted the other two elements of Dansie's claim and the fact that the district court had found in Dansie's favor on those two elements. Such an instruction would have clarified for the jury that the fact that the bulk of Dansie's layoffs or failures to report occurred prior to April 3, 2017, did not mean that Union Pacific's termination of his employment was necessarily unrelated to the exercise or attempted exercise of his FMLA rights. Those prior layoffs or failures to report did not remove Dansie from FMLA coverage or in any way negate his rights under the FMLA.

By failing to provide the jury with a supplemental instruction, and instead simply referring the jury back to the original instructions that did not discuss the first two elements of the claim, the district court effectively left the jury without an answer to their question. And that in turn may have prejudiced Dansie because the jury, by not being informed of the district court's legal conclusion that Dansie was entitled to FMLA leave,

---

[4] Typically, referring the jury back to the original instructions would not be an abuse of discretion. But here, where the original instructions failed to fully inform the jury of the elements of Dansie's interference claim and the district court's conclusions regarding two of those elements, referring the jury back to the original instructions could not have resolved the jury's question.

10

may well have decided that Union Pacific did not interfere with Dansie's FMLA rights because Union Pacific based the termination on absences that largely occurred prior to Dansie accumulating the requisite hours and being approved by Union Pacific's Health and Medical Services Department for FMLA leave.

For these reasons, I conclude that the district court abused its discretion in refusing to provide supplemental instructions and, in turn, denying Dansie's motion for new trial. I in turn conclude that the proper remedy is to remand to the district court for a new trial. *See generally Exby-Stolley v. Bd. of Cty. Comm'rs*, 979 F.3d 784, 820 (10th Cir. 2020) (noting that a district court's judgment must be reversed and the case remanded for a new trial if the jury might have based its verdict on an erroneously given instruction).