**UNITED STATES of America,
Appellant,**

v.

**Leland SOWARDS and Ruth Sowards, his
wife, et al., Appellees.**

**No. 7767.**

United States Court of Appeals
Tenth Circuit.

Dec. 11, 1964.

George R. Hyde, Atty., Dept. of Justice, Washington, D. C. (Ramsey Clark, Asst. Atty. Gen., Washington, D. C., William T. Thurman, U. S. Atty., Salt Lake City, Utah, and Roger P. Marquis, Atty., Dept. of Justice, Washington, D. C., with him on the brief), for appellant.

J. Lambert Gibson, of Lamoreaux & Gibson, Salt Lake City, Utah, for appellees.

Before MURRAH, Chief Judge, and PICKETT and SETH, Circuit Judges.

PICKETT, Circuit Judge.

In this condemnation proceeding, the United States acquired for public use, the "coal, coal mines and workings" in and on 18.18 acres of land in Uintah County, Utah, the surface rights of which the United States owned. The issue of just compensation for the coal interests was tried to a jury. This is an appeal from a total award of $21,000. The principal questions presented relate to the admission and rejection of evidence of expert witnesses, and prejudicial comments of the court.

The evidence is without dispute that the coal in question was of inferior quality, and that the total amount in place was approximately 41,000 tons. The mining facilities were in a dilapidated condition, and no coal had been mined

on the property for about 45 years. To establish the fair market value of the property taken, the United States called as expert witnesses mining engineers with wide experience in the coal mining industry. These witnesses had investigated the coal market in the area and made inquiry of different individuals concerning the marketability of comparable coal, and the possibility of the sale of like coal deposits. Apparently the court was of the view that an expert can not elaborate on his activities during the investigation which form the basis of his opinion as an expert, and applied the strict hearsay rule.[1] As a general rule, an expert may testify as to hearsay matters, not to establish substantive facts, but for the sole purpose of giving information upon which the witness relied in reaching his conclusion as to value. H. & H. Supply Co. v. United States, 10 Cir., 194 F.2d 553. When evidence is given for this purpose, the jury should be so instructed. The admission of this type of evidence was recently discussed by this court in United States v. Featherston, 10 Cir., 325 F.2d 539, at 542–543, where it was said:

"Although the best evidence and hearsay rules are important, they should not be applied to prevent an expert giving in a reasonable way the basis for his opinion. The fear of trial prolongation by exploration of collateral issues does not impress us. Within reasonable bounds, the expert may testify to the facts upon which his opinion of value is based and the court in the exercise of its sound discretion can assure that the evidence does not go afield." (Footnote omitted)

■ In condemnation cases, market value is usually established by sales of like property. It does not follow, however, that the owner is precluded from proving value when there have been no comparable sales. In such cases resort may be had to best available data which, even though speculative, under some circumstances may be sufficient to allow a jury to make an informed estimate of value. United States v. Miller, 317 U. S. 369, 63 S.Ct. 276, 87 L.Ed. 336, rehearing denied 318 U.S. 798, 63 S.Ct. 557, 87 L.Ed. 1162; United States v. Silver Queen Mining Co., 10 Cir., 285 F. 2d 506; Harwell v. United States, 10 Cir., 316 F.2d 791.

Throughout the trial the court assumed a hostile attitude toward representatives of the United States to such an extent that this court is of the view that a fair trial was not had. This attitude is illustrated by comments during the course of the court's instructions to the jury. The action was referred to as one between a few citizens on one hand and all the power and majesty of the wealthiest nation in the world on the other hand. The government witnesses were classed as advocates, and their credibility was directly attacked because they were of the opinion that the prop-

1. This is illustrated by the following comments by the court:
"Q. Did you do any other investigation with respect to determining whether there would be a market for coal deposit properties such as the Gibson Mine property? A. Yes. We went to, for example, the real estate dealers, certain real estate people, and banks in the Vernal—in the city of Vernal—and asked them, and they said they knew—
"THE COURT: Well—
"MR. THURMAN: Never mind. Don't say what they told you.
"THE COURT: You see, everything you are asking about is hearsay. This man went around and talked to people, and now you are having him tell you what they said.
"Q. (By Mr. Thurman) did you make any investigation—
"THE COURT: Pretty soon you are going to ask his opinion about something, and that opinion is going to be largely based upon what other folks told him, not of his own personal knowledge and experience—going around talking to people.
"MR. THURMAN: Yes, your Honor.
"THE COURT: So far as you are inquiring into that I think it is improper. You have, apparently, a very highly qualified man here. I don't see why you want to pursue it any further."

erty taken had no market value.[2] The implications of the court's attitude and one-sided remarks, were that an all-powerful government was unjustifiably attempting to acquire the owner's valuable property without paying anything for it. There is nothing in the record which would indicate that the government witnesses were not expressing an honest, fair and sincere opinion as to the value of the property.

A trial judge in a federal court has the unquestioned right to comment reasonably upon the evidence, and to express his opinion of it, provided it is made clear to the jury that it is not bound by his views and that they are the sole judges of the facts. Quercia v. United States, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321; Union Carbide and Carbon Corp. v. Nisley, 10 Cir., 300 F.2d 561; Appliance Distributors v. Mercury Electric Corp., 10 Cir., 202 F.2d 651. It is the duty of the court, however, to exercise great care to maintain an impartial attitude and not to become an advocate for one of the parties to the litigation or to mislead the jury. Grounds v. Roth, 10 Cir., 210 F.2d 239; Smith v. Welch, 10 Cir., 189 F.2d 832. The right of a trial judge to comment on the evidence has its limitations. "His discretion is not arbitrary and uncontrolled, but judicial, to be exercised in conformity with the standards governing the judicial office. In commenting upon testimony he may not assume the role of a witness. He may analyze and dissect the evidence, but he may not either distort it or add to it. His privilege of comment in order to give appropriate assistance to the jury is too important to be left without safeguards against abuses. The influence of the trial judge on the jury 'is necessarily and properly of great weight' and 'his lightest word or intimation is received with deference, and may prove controlling.' This court has accordingly emphasized the duty of the trial judge to use great care that an expression of opinion upon the evidence 'should be so given as not to mislead, and especially it should not be one-sided'; that 'deductions and theories not warranted by the evidence should be studiously avoided.' Starr v. United States, 153 U.S. 614, 626 [14 S.Ct. 919, 923, 38 L.Ed. 841]; Hickory v. United States, 160 U.S. 408, 421–423 [16 S.Ct. 327, 332, 40 L.Ed. 474]." Quercia v. United States, supra, 289 U.S. at 470, 53 S.Ct. at 699. The effect of the court's statements to the jury was to destroy the evidence of the government's witnesses and was such, we think, as to prevent a fair and dispassionate consideration of the evidence by the jury.

The United States also contends that the court erred in refusing to permit offered rebuttal evidence. It would appear from the record that after the case had gone to the jury the court recognized that this evidence should have been ad-

---

2. Typical of these comments is the following:

"You ladies and gentlemen of the jury and the court are sitting here this afternoon between the owners of the mineral rights in this piece of land, a few citizens of this state, on the one hand, and all the power and majesty of the Government of the United States of America, the most powerful government, the most wealthy government in the world. We are here with only one obligation, and that is to see that justice is done between the parties to this proceeding.

"It always disturbs me when the Government comes in—and the Bureau of Reclamation has done this more than once—and says that the citizen's property isn't worth a red cent; it is worth nothing; it isn't worth anything.

"Now, it is for you ladies and gentlemen of the jury to determine whether this property is worthless, isn't worth a dime, and whether, as Mr. Thurman claims, these Government officials are being fair, because those matters go to the question of the credibility of the Government witnesses. And it is for you ladies and gentlemen of the jury to determine the credibility of the witnesses.

"And by 'credibility of the witnesses' I mean simply whom you will believe and what you will believe and where the ultimate truth in this case lies. You may take into account in determining the credibility of the Government's witnesses that they say these mineral rights, this coal deposit, the dimensions and thickness and character of which the witnesses have told you about, isn't worth a dime."

mitted. We assume this error will not recur on retrial.

Reversed and remanded for a new trial.