**PUBLISH**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

VICENCIO OLEA-MONAREZ,

    Defendant - Appellant.

No. 16-3330

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 2:14-CR-20096-JAR-1)**

Grant R. Smith, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, with him on the briefs), Office of the Federal Public Defender, Denver, Colorado, for Defendant-Appellant.

Carrie N. Capwell, Assistant United States Attorney (Thomas E. Beall, United States Attorney, and David P. Zabel, Assistant United States Attorney, with her on the brief), Office of the United States Attorney, Kansas City, Kansas, for Plaintiff-Appellee.

Before **MATHESON**, **BALDOCK** and **EID**, Circuit Judges.

**EID**, Circuit Judge.

Defendant-Appellant Vincencio Olea-Monarez was charged along with several co-defendants in a thirty-one-count indictment related to a large drug-trafficking conspiracy.

Count 8 of the indictment alleged that on or about December 12, 2013, Olea-Monarez knowingly and intentionally distributed more than fifty grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii).

During deliberations, the jury sent the district court two questions regarding Count 8. In the first, the jury asked what evidence would support Count 8. The judge responded that testimony and exhibits had been admitted concerning the count, which the jury could review upon their request. The second question asked whether the indictment for Count 8 had the incorrect date. The judge responded by noting that there had been four witnesses who testified about Count 8, and that Exhibits 98 and 99 relating to the charge had been admitted. Olea-Monarez now argues that both of the court's responses to the jury questions were erroneous and require reversal of his conviction for Count 8. We disagree and affirm the district court. We hold that the trial court judge did not abuse its discretion in responding to the jury's questions because, although it at times directed the jury's attention to evidence, it made no evaluation of the evidence and therefore did not impinge on the jury's role as factfinder.

I.

At trial, several witnesses testified as to a controlled purchase of methamphetamine by a confidential source from Olea-Monarez on December 12, 2013.

First, Special Agent Timothy Swanson testified that at his direction, Craig Lee, the confidential source, performed a controlled purchase with Olea-Monarez on December 4,

2013. Agent Swanson noted that another controlled purchase occurred on December 12, 2013. However, because he did not personally participate in that purchase, the agent did not testify further about it. Second, Deputy Evan Comerio, an FBI task force officer in the investigation, testified that he supervised and directed Craig Lee to conduct a controlled buy of methamphetamine from Olea-Monarez on December 12, 2013. Through Deputy Comerio's testimony, the government offered the 53.3 net grams of methamphetamine purchased, and the lab report of the methamphetamine as Exhibits 98 and 99, respectively. Third, Craig Lee, the confidential source, testified on behalf of the government. While Lee could not testify as to the exact dates of the two controlled purchases, he was able to recall that both purchases occurred in December 2013. Finally, Olea-Monarez took the stand and admitted to two December 2013 controlled purchases with Craig Lee during cross-examination.[1]

After the fifteen-day trial, the jury began deliberations. During deliberations, the jury sent a note to the district court asking: "With respect to Count No. 8, we can't find evidence to review with this charge. What is the evidence or government number?" Olea-Monarez argued the district court should decline to answer the question directly and instead tell the jury that it had received all the evidence in the case. Ultimately, the district court

---

[1] While Olea-Monarez's testimony was at times contradictory, our review of the record shows that he did admit to the controlled purchases with Craig Lee. For example, on cross examination, he initially denied selling methamphetamine to Lee on two occasions in December 2013. He soon after admitted: "[w]ell, I did sell up to like 2014 when it was like controlled buys, but not before that." Later, when asked whether he disputed Agent Swanson's testimony regarding his surveillance of a controlled purchase, Olea-Monarez admitted that he participated in the purchase.

responded: "There was testimony concerning Count No. 8, and there were exhibits admitted concerning Count No. 8, which you have, except for the drug exhibit, which you can view upon request."

Later, the jury asked another question: "We find evidence of a buy February 12. Count 8 references a buy December 12. Could Count 8 date be an incorrect date?" Olea-Monarez again urged the court to respond only that the jurors should depend upon their own notes and recollection of the evidence. Ultimately, the court responded: "There was testimony from at least four witnesses about this buy. There was Exhibit 98—drug evidence, which is available for your review upon request. Exhibit 99 is the lab report. You must rely on your collective recollection of all of the evidence, including the testimony and the admitted exhibits." Less than an hour later, the jury found Olea-Monarez guilty on all counts.

Olea-Monarez now argues that both of the court's responses to the jury questions were erroneous and require reversal of his conviction for Count 8. We disagree.

II.

This court reviews a district court's actions in response to questions from the jury, as well as supplemental instructions given to the jury, for an abuse of discretion. *See Allen v. Minnstar, Inc.*, 97 F.3d 1365, 1372 (10th Cir. 1996). A district court abuses its discretion when its decision is "arbitrary, capricious or whimsical" or falls outside "the bounds of

permissible choice in the circumstances." *United States v. Mares*, 441 F.3d 1152, 1156 (10th Cir. 2006) (quoting *United States v. Shumway*, 112 F.3d 1413, 1419 (10th Cir. 1997)).

"When a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy." *Bollenbach v. United States*, 326 U.S. 607, 612–13 (1946); *see also United States v. Zimmerman*, 943 F.2d 1204, 1213 (10th Cir. 1991) (citing *Bollenbach*). "[A] district judge has a duty to guide the jury toward an intelligent understanding of the legal and factual issues it must resolve, particularly when the jury asks a question revealing its confusion over the central issue of a case." *Shultz v. Rice*, 809 F.2d 643, 650 (10th Cir. 1986).

The United States Supreme Court has explained that a trial judge may assist the jury by "explaining and commenting upon the evidence" and by "drawing their attention" to portions of the evidence it deems important, "provided he makes it clear to the jury that all matters of fact are submitted to their determination." *Quercia v. United States*, 289 U.S. 466, 469 (1933). There are, however, "inherent limitations" to a district court's privilege to comment on the facts. *Id.* at 470. The district court may not "assume the role of the witness" and may not "distort" or "add to" the evidence. *Id.* Recognizing that juries place great weight upon the words of the district court, the Supreme Court cautioned that district courts must "use great care that an expression of opinion upon the evidence should be so given as not to mislead, and especially that it should not be one-sided." *Id.* (quotation omitted).

Relying on *Quercia*, we have explained that a federal district court judge "has the unquestioned right to comment reasonably upon the evidence, and to express his opinion of it, provided it is made clear to the jury that it is not bound by his views and that they are the sole judges of the facts." *United States v. Sowards*, 339 F.2d 401, 403 (10th Cir. 1964). As such, the district court must "exercise great care to maintain an impartial attitude and not to become an advocate for one of the parties to the litigation or to mislead the jury." *Id.* With this understanding, we turn to the two queries posed by the jury in this case.

A.

The jury's first question made clear that it was having some degree of confusion regarding Count 8. Specifically the jury asked: "With respect to Count No. 8, we can't find evidence to review with this charge. What is the evidence or government number?" The district court responded: "There was testimony concerning Count No. 8, and there were exhibits admitted concerning Count No. 8, which you have, except for the drug exhibit, which you can view upon request." We conclude that the district court did not abuse its discretion in making this response.

The district court here stated that there was evidence "concerning" Count 8. It did not specifically identify that evidence in any way, nor did it explain or even comment upon it. Consistent with *Quercia* and *Sowards*, the district court was well within its discretion to answer the jury's question as it did. *Quercia*, 289 U.S. at 470; *Sowards*, 339 F.2d at 403. Olea-Monarez argues that the court's choice of the word "concerning" was tantamount to the use of the word "supporting." We disagree. "Concerning" is a neutral

6

term meaning "relating to." *Concerning*, *Black's Law Dictionary* (5th ed. 1979). The district court made no comment regarding the persuasive value or impact of any evidence presented in the case. In essence, the district court told the jury to go back and look at the evidence, which it was well within its discretion to do.

Olea-Monarez further argues that the district court made the same error here that was made in *United States v. Ayeni*, 374 F.3d 1313, 1316 (D.C. Cir. 2004), where the district court allowed supplemental closing arguments by both sides in response to the jurors' questions and then allowed the parties to "fashion responses targeted precisely" to the jury's concerns. Olea-Monarez's reliance on *Ayeni* is misplaced. Here, there was no supplemental argumentation in response to the jury's questions, which was the primary concern of the *Ayeni* court. *Id.* at 1315. In addition, there was no "targeted response." As noted above, the court did not direct the jury to particular evidence. Therefore, we find *Ayeni* to be readily distinguishable. Accordingly, we conclude that the district court did not abuse its discretion with regard to its answer to the first query made by the jury.

B.

The jury's confusion regarding Count 8 continued with a second note, which stated: "We find evidence of a buy February 12. Count 8 references a buy December 12. Could Count 8 date be an incorrect date?" The court responded: "There was testimony from at least four witnesses about this buy. There was Exhibit 98—drug evidence, which is available for your review upon request. Exhibit 99 is the lab report. You must rely on your collective recollection of all of the evidence, including the testimony and the admitted

7

exhibits." Olea-Monarez contends that this response was an abuse of discretion. More particularly, Olea-Monarez argues that the court's response presents two issues. First, by stating there were "at least four" witnesses who testified about the December 12 controlled buy, the judge misled the jury. Second, by telling the jury there were four witnesses who testified regarding the buy and pointing directly to Exhibits 98 and 99, the judge invaded the role of the jury as factfinder.

The district court's statement that four witnesses had testified about the December 12 buy was not misleading. After reviewing the record, we find that there were indeed four witnesses who testified about the December 12 controlled purchase from Craig Lee: Agent Swanson, Deputy Comerio, as well as Craig Lee and Olea-Monarez themselves. But Olea-Monarez does not claim that the statement was misleading because a different number of witnesses testified about a December 12 buy. Rather, he argues that three of those witnesses—Swanson, Lee, and Olea-Monarez himself—failed to provide *meaningful* testimony about a December 12 buy, so the court's answer indicated the existence of more evidence than there actually was. We disagree. Evaluating testimony, including determining whether it is meaningful or not, is a job for the factfinder. *See United States v. Dazey*, 403 F.3d 1147, 1159 (10th Cir. 2005). And merely stating that four witnesses testified about a certain topic—without mentioning who the witnesses are—does not indicate the existence of meaningful evidence pointing one way or another. As such, the district court's response was not misleading.

8

With regard to Olea-Monarez's second contention, we acknowledge that the district court's response to this jury query poses a more difficult question than its response to the first query, as the district court directed the jury's attention to specific evidence. However, the court did not in any way evaluate or comment upon that evidence. This fact distinguishes the D.C. Circuit's decision in *United States v. Miller*, 738 F.3d 361 (D.C. Cir. 2013), upon which Olea-Monarez relies.

There, the jury sent several notes, relating to nearly twenty separate charges, asking for clarification of the dates and times of incriminating recorded calls as listed in the indictment. *Id.* at 380–81. In response, the district court pointed the jury to specific phone calls. For example, in response to a question about Count 59—charging Miller with unlawful use of a communication facility on or about April 15, 2004—the district court pointed the jury to a call that took place six days before, on April 9, 2004. *Id.* at 384. This response foreclosed an independent evaluation of the evidence by the jury because the charges called for the jury to find that certain calls occurred "on or about" certain dates. The *Miller* court stated that the jury reasonably could have found that the difference of six days between the time listed on the indictment and the time of the phone call could be too temporally remote to support Count 59. *Id.* As such, the jury's fact-finding function was invaded.

*Miller* is distinguishable from the facts presented here. While the district court did direct the jury to evidence supporting a charge, the response did not eliminate the jury's fact-finding function. Rather than pointing to a piece of admitted evidence with a date and

9

time stamp on it, as the district court did in *Miller*, the district court here noted for the jury that there was testimony from at least four witnesses about the December 12 purchase and directed the jury to the relevant exhibits. The district court did not state who the four witnesses were, what they said regarding the controlled purchase, or how the jury should evaluate such evidence.

Particularly troubling for the *Miller* court was that the district court indicated that it was conveying the "prosecution's view of what calls the grand jury intended to support the counts." *Id.* at 385. The *Miller* case involved thousands of recorded calls. Though there were several calls that could have supported several charges, the district court directly pinpointed which calls should support which charge. Here, by contrast, the district court did not convey the prosecution's view of what drug evidence the grand jury intended to support the counts or select from several plausible pieces of evidence—the only direct drug evidence offered relating to Count 8 was the methamphetamine from the controlled purchase and its supporting drug lab report. Further, the jury here did not require guidance on any other charge, while in *Miller*, the jury struggled with and submitted questions about nearly twenty charges.

Our review of the record reveals that it is true that the methamphetamine exhibit did not have a date affixed to it that would have assisted the jury in connecting it to the related charge, and that the lab report's date of analysis was December 26. However, the jury's exclusive province to interpret the intended scope of the indictment in deciding whether the prosecution had met its burden of proof on the charged offense was not affected by the

10

trial judge directing them to this evidence. Indeed, given the lack of dates on the drug evidence, and the December 26 date on the lab report, a reasonable jury could have determined the evidence was not reasonably related to the December 12 purchase, even after being directed to it. And the district court reminded the jury that they must rely on their collective recollection of all of the evidence, including the testimony and admitted exhibits.

In essence, Olea-Monarez argues that a district court can never point to particular evidence in response to a jury's question. We decline to adopt this reasoning and instead look at the overall circumstances and context of the question posed by the jury. In this case, the record makes apparent that the jury was confused regarding Count 8. As noted, the jury did not struggle with any of the remaining thirty charges, but submitted two questions regarding Count 8 specifically. Though it is the prosecution's duty to prove its case beyond a reasonable doubt, the Supreme Court and our own case law reaffirm our conclusion that a federal trial judge "has the unquestioned right to comment reasonably upon the evidence, and to express his opinion of it, provided it is made clear to the jury that it is not bound by his views and that they are the sole judges of the facts." *Sowards*, 339 F.2d at 403 (citing *Quercia*, 289 U.S. at 469). The district court's response did not comment upon the ultimate factual issue, nor add to or evaluate the evidence regarding Count 8. *United States v. Nickl*, 427 F.3d 1286, 1293 (10th Cir. 2005) ("It is improper for a judge to comment directly on the factual issue to be decided by the jury."). Instead, the response guided the jury toward an intelligent understanding of the factual issues. *See*

11

*Shultz*, 809 F.2d at 650 ("[A] district judge has a duty to guide the jury toward an intelligent understanding of the legal and factual issues it must resolve, particularly when the jury asks a question revealing its confusion over the central issue of a case."). The second response was a permissible choice given the circumstances of the jury's evident confusion and the fact that it was a fifteen-day trial involving multiple counts. And the district court followed it up with an important reminder that the jury needed to rely on its own recollection of all the evidence. *Sowards*, 339 F.2d at 403. Accordingly, we hold that the district court did not abuse its discretion in the second response.

In a final argument, Olea-Monarez argues that the district court should have simply answered "no" to the jury's question, thus informing the jury that the date was not in error. While this might have been a permissible answer, the question here is whether the answer the court did give was an abuse of discretion. We find that it was not.

### III.

For the reasons stated above, we AFFIRM Olea-Monarez's conviction on Count 8 of the indictment.