**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 31, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

　　　Plaintiff - Appellee,

v.

JUSTIN MILES NESS,

　　　Defendant - Appellant.

No. 23-7051

_____

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. 6:21-CR-00330-JFH-1)**

_____

Howard A. Pincus, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender with him on the briefs), Denver, Colorado, for Defendant - Appellant.

Lisa C. Williams, Special Assistant United States Attorney (Christopher J. Wilson, United States Attorney, with her on the briefs), Muskogee, Oklahoma, for Plaintiff - Appellee.

_____

Before **PHILLIPS**, **CARSON**, and **FEDERICO**, Circuit Judges.

_____

**PHILLIPS**, Circuit Judge.

_____

Justin Ness appeals his conviction for possessing a firearm and ammunition after his felony conviction. He contends that the district court plainly erred by inadequately responding to a written jury question about the

temporal limit of "on or about September 8, 2021," as charged in the indictment. He contends that because the jury asked, the court needed to respond by reinstructing that "reasonably near," as a rule, means within "a few weeks." He contends that the court's failure to do so may have led the jury to convict him for his uncharged conduct from several months earlier. We hold that Ness has not shown error, let alone plain error that substantially prejudiced him. We affirm his conviction.

## BACKGROUND

This case began with an FBI referral to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) to investigate Ness for illegal possession of firearms and ammunition. With evidence obtained from Ness's public Facebook page—photos of Ness holding a firearm—ATF obtained a search warrant for Ness's private Facebook page. From that search, ATF obtained a video of Ness shooting a firearm, photos of him holding a firearm, an audio recording of him admitting being "prohibited and possessing firearms," and "several conversations between Mr. Ness and other parties about firearms" and conversations about his "possession of ammunition[.]"

With all that information, ATF obtained a search warrant for Ness's residential trailer located about 30 minutes outside of Porum, Oklahoma. From September 5–7, 2021, ATF surveilled Ness's trailer, seeing two cars parked there each day. But on September 8, 2021, at 6:01 a.m., when ATF executed the search warrant at the trailer, one of Ness's cars was no longer there. Ness was

2

the sole occupant of the trailer, but he was not there when ATF arrived that morning to search. From the search, ATF seized a firearm and a cache of ammunition.

On October 19, 2021, the government indicted Ness with a single felon-in-possession count:

> On or about September 8, 2021, within the Eastern District of Oklahoma, the defendant, **JUSTIN MILES NESS**, having been convicted of a crime punishable by imprisonment for a term exceeding one year, and knowing of such conviction, did knowingly possess in and affecting commerce, a firearm and ammunition, to-wit:
>
> - Fifty-four (54) rounds of Winchester Brand 6.5 Creedmoor caliber ammunition;
>
> - Twenty (20) rounds of Winchester Brand 7.62x 39mm caliber ammunition;
>
> - One Hundred (100) rounds of Blazer Brand .40 S&W caliber ammunition;
>
> - Sixteen (16) rounds of Remington Peters Brand 6.5 Creedmoor caliber ammunition;
>
> - Eighty-Seven (87) rounds of Winchester Brand .40 caliber ammunition;
>
> - Eleven (11) rounds of the Lake City Brand 5.56 caliber "Green tip" ammunition;
>
> - One hundred ten (110) rounds of Lake City Brand, 5.56 caliber ammunition;
>
> - One (1) round of Winchester Brand .40 S&W caliber ammunition;
>
> - Forty-Seven (47) rounds of PMC Brand S&W .40 caliber ammunition;

3

- Fifty (50) rounds of MexTech by GH Ammunition brand 9 mm Luger caliber ammunition;

- Fifty (50) rounds of Winchester Brand 6.5 Creedmoor caliber ammunition;

- Seven (7) rounds of Remington Peters brand and 6.5 Creedmoor caliber ammunition;

- Savage, Model 10, 6.5 Creedmoor caliber rifle, s/n: N247699,

which had been shipped and transported in interstate commerce, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

R. vol. 1, at 11–13.[1]

In March 2022, the court held a two-day trial. The government introduced evidence of the charged firearm and ammunition as well as some of Ness's postings to his Facebook account, including these:

- A video recorded in December 2020 of Ness shooting the Creedmoor rifle. Connected with this, Ness commented, "That rifle I had at your house[.]"

- Photos taken in December 2020 of Ness holding and pointing a Creedmoor rifle.

- An audio recording of Ness stating that he was prohibited from possessing firearms.

- On December 18, 2020, Ness commented, "My way of acquiring weapons may have been more expensive than going into a store, but you won't see the police or ATF kicking in my door because of a registry."

---

[1] The parties stipulated to Ness's felony status on that date as well as the interstate nexus for the firearm and ammunition.

- On December 26, 2020, Ness commented, "Those bastards sold me a used gun."

- On December 27, 2020, Ness commented, "That rifle I had at your house," referring to the same Creedmoor rifle.

- On February 26, 2021, Ness commented, "Dammit, still no Creedmoor."

- On March 27, 2021, Ness commented, "IDK how long I'll have access to Messenger."

- On April 7, 2021, Ness commented, "I can't find ammo for the Creedmoor for shit."

- On April 25, 2021, Ness commented, "He carries zip ties. I carry Smith & Wesson," followed by a smiley-face emoji.

- On April 28, 2021, Ness commented, "I neeeeeeeeeed Creedmoor."

- On May 6, 2021, Ness commented, "Today I got laughed at trying another store for Creedmoor."

- On May 11, 2021, responding to a question about how he was getting settled, Ness commented, "Okay, I guess. I can't find where I left my pistol LOL." Seconds later, he commented, "Geoff said I put it in [Ness's noncustodial daughter's] room maybe when I finished putting everything in there away. I'll find it."

- On June 1, 2021, responding to a post from May 31, Ness commented, "I have the 16x Viper on my Savage 6.5," referring to a scope.

- On July 13, responding to a male wanting "gun advice" as between "[a] Springfield XD 9-millimeter or the Smith & Wesson M&P shield plus," Ness responded, "The shield is what I have. It's a compacy [the agent thought this was a mistype of "compact"]."

- On a date not revealed in the record, Ness mused, "Hmmmmm, the Smith & Wesson .40 or the Savage Creedmoor." A photograph was attached to the comment showing "two boxes of ammunition, a magazine, what appears to be a Creedmoor; a case, rifle case, and then a pistol case in the bottom, left corner that would fit a .40-caliber firearm."

5

The government also presented testimony from the two primary investigating ATF agents, whose testimony included these highlights:

*ATF Senior Special Agent Stephens*:

- Agent Stephens testified about the investigation and search warrants and provided foundation for admission of the Creedmoor rifle and the Facebook evidence.

*ATF Special Agent Withem*:

- Agent Withem testified that he surveilled Ness's trailer starting at about 5:30 a.m. on September 5–7, 2021. He saw two cars parked outside the trailer. On September 8 at 6:00 a.m., when the search began, one of the cars was gone.

- On September 8 at about 10:21 a.m., after the search, the trailer-park manager approached Agent Withem and gave him Ness's and Irwin's telephone numbers. Agent Withem called Ness, who told him that he had left the trailer later in the morning on September 7, which was Labor Day. Ness also told the agent that the rifle seized at his trailer wasn't his but that he was just holding it for somebody. When asked about the Smith & Wesson pistol, Ness said that he didn't currently possess it.

After that, the government rested.

For its case, the defense called two witnesses: Geoff Irwin and Ness. Their testimony included these statements:

*Irwin*:

- Irwin testified to his long friendship with Ness.

- Irwin said that he had purchased the Creedmoor rifle in May 2020 for himself and that it belonged to him, not Ness.

- Irwin stated that he had left the rifle and ammunition at Ness's trailer a couple of weeks earlier and had told Ness about this a couple of days after leaving them there. He denied knowing Ness was a felon.

- Irwin testified where he had left the rifle and ammunition in the trailer and that the rifle and ammunition were not in the same locations as shown in the ATF's pre-search video of the inside of Ness's trailer. He testified that he had left the rifle in its case but acknowledged that it was outside the case in a different room at seizure. He also said he was surprised the rifle's magazine was no longer in the case in the middle bedroom but was found in Ness's bedroom. He acknowledged that the spent casing of .50-caliber was not his. He also agreed that ammunition was in a different place in the trailer from where he had left it.

*Ness*:

- Ness denied having known that the Creedmoor rifle and the ammunition were in his trailer until the day of the search. He denied telling Agent Withem that he had been in the trailer the days before September 8 or that he was holding the rifle for someone.

- Ness admitted that in December 2020, as seen on the video, he had shot the Creedmoor seized from his trailer but claimed he thought he could possess a firearm if he did not own it.

- Ness dismissed his Facebook commentary as owing to his being a "blowhard" and to his "puffing."

- Ness said that his comment expressing dissatisfaction about being sold a used gun referred to a used BB gun he'd purchased to teach his daughter marksmanship and to "brush up myself."

On cross-examination, Ness admitted that he had said in a recorded voice message, "I won't get caught possessing a firearm."

At the close of the second day of trial, the court submitted the case to the jury. Included in the jury instructions was our circuit's pattern instruction for "on or about":

> You will note that the Indictment alleges that the charged offense was committed on or about September 8, 2021. The Government must prove beyond a reasonable doubt that the Defendant committed this alleged crime reasonably near the alleged date.

R. vol. 1, at 91.

After the jury began its deliberations, the foreperson sent the court this note:

> We need to know what was the timeline that the [sic] alleges that the charged offense was committed on or about Sept. 8, 2021
>
> How far back do we go back on the dates

*Id.* at 104.[2] As seen, the jury asked a legal question—under the law, how far back can "on or about" extend from September 8, 2021?[3]

Soon after, the court and counsel met to discuss possible responses to the jury's note and agreed on a response:

| | |
|---|---|
| THE COURT: | My inclination is simply to write a response that says "You have all the evidence you need to render your verdict." The other option is that I could refer them to the instruction titled "On Or About," but I don't know whether I need to do that or not. What is the government's response? |
| MR. COSNER: | The first would be fine as far as the government is concerned, Your Honor. |
| THE COURT: | All right. Mr. Starr, do you have any thoughts on that? |
| MR. STARR: | No, sir. I think what you've indicated is probably proper. They've got all the evidence they need. |

---

[2] We think it likely that the foreperson was referring to the *indictment*'s timeline but inadvertently omitted that word.

[3] Ness contends that the jury asked two questions. Op. Br. at 17. He considers the first—the "We need to know"—portion as a factual question and the actual question as a legal one. *Id.* at 17–18. We read them as raising the same legal question.

R. vol. 3, at 340–41.

On appeal, Ness no longer agrees that the court's response was "probably proper." Now he alleges that the district court erred by not clarifying the "on or about" instruction. He contends that the district court needed to clarify what counts as "reasonably near" once the jury asked the question it did here. He acknowledges forfeiting this argument in the district court and so now argues for plain error.

## STANDARD OF REVIEW

Because at trial Ness forfeited the issue about the district court's response to the jury's note, we review for plain error.[4] "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Harris*, 695 F.3d 1125, 1130 (10th Cir. 2012) (citation omitted). An error is considered "plain" if it is obvious under current law. *United States v. Olano*, 507 U.S. 725, 734 (1993).

## DISCUSSION

### I.    Error

Ness does not contend that the district court erred by instructing the jury with our circuit's pattern instruction for "on or about." But he does contend that everything changed when the jury asked its question about the temporal

---

[4] The Government has not pursued waiver or invited error, so we do not consider that issue.

limit of "on or about." Once that happened, Ness says, the court had a duty to clarify the instruction by advising the jury that it could convict Ness only for conduct within "a few weeks" of September 8, unless the circumstances of the case justified a longer interval. Op. Br. at 19–20.

We agree with Ness that the court's written response to the jury's question was nonresponsive. The jury didn't ask whether it had all the evidence it needed to decide the case. The court could have pointed the jury back to its earlier given instruction on "on or about." But that doesn't mean that the district court erred by not reinstructing with Ness's expanded definition of "reasonably near." In arguing otherwise, Ness relies (1) on a line of cases generally requiring clarification when the jury might mistakenly convict without being told an undisputed legal principle and (2) a Tenth Circuit case that he cites as supplying "a ready way, rooted in this court's precedent, to clear up the jury's difficulty with how far back in time 'on or about' can reach." Op. Br. at 19.

For the general principle, Ness relies on *Bollenbach v. United States*, 326 U.S. 607 (1946), for the proposition that "[w]hen a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy." *Id.* at 612–13. But in *Bollenbach*, the district court *could* have done so but chose not to. There, the jury had asked the court a vital legal question that had a clear legal answer. Deliberating on whether the defendant was guilty of conspiring to transport securities in interstate commerce while knowing the securities to be

10

stolen, the jury asked, "[c]an any act of conspiracy be performed after the crime is committed?" *Id.* at 609. The correct legal answer was no. But the court instead advised that "possession of stolen property in another State than that in which it was stolen shortly after the theft raises a presumption that the possessor was the thief and transported stolen property in interstate commerce[.]" *Id.* The Supreme Court ruled that the district court had failed in its duty to clarify with concrete accuracy, noting that the jury was confused "concerning the relation of knowingly disposing of stolen securities after their interstate journey had ended to the charge of conspiring to transport such securities." *Id.* at 612–13.

Similarly, Ness relies on *United States v. Zimmerman*, 943 F.2d 1204 (10th Cir. 1991). There, the defendant was charged with conspiring to defraud another. *Id.* at 1206. The defendant was an attorney whose firm's trust account had allegedly been "used to conceal funds of the debtors [his clients] from the bankruptcy court and creditors in the bankruptcy proceedings." *Id.* During its deliberations, the jury sent the court a note asking whether a person observing an obvious crime has a legal responsibility to report the crime or to intervene to stop the crime, and whether failure to report or intervene makes the observer a participant or in any way responsible. *Id.* at 1213. As in *Bollenbach*, this question also had a clear answer of no. But rather than tell the jury this, the district court simply referred it back to its earlier-given instructions, which included instructions defining conspiracy, intent, and specific intent. *Id.*

11

In deciding *Zimmerman*, our court acknowledged *Bollenbach*'s direction that "[w]hen a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy." *Id.* (quoting 326 U.S. at 612–13). We noted that "the jury wanted to know the consequence of failing to intervene and whether the failure to report a crime had significant consequences and could show some guilt or participation." *Zimmerman*, 943 F.2d at 1213–14. We identified a clear legal rule that "without a duty there can be no conviction of the observer who does not actively participate in the crime by some conduct." *Id.* at 1214 (citations omitted). Once there, we reversed after ruling that "[t]he jury should have been instructed in a way that there was no possibility that the conviction was based on an incorrect legal basis." *Id.* "Absent such an instruction, the conclusion is inescapable that the jury may have convicted on an improper basis." *Id.* (cleaned up).

These cases do not help Ness. In both *Bollenbach* and *Zimmerman*, the district court had available an undisputed legal principle that would have cured the jury's uncertainty and avoided the possibility of an improper conviction. In those circumstances, the district courts erred by not clearing away the juries' difficulties with concrete accuracy. But the district court in Ness's case had no such ability to do so. Our pattern instruction reads the way it does because of the inability to specify the limits of "on or about" with concrete accuracy. Those limits will vary depending on the case and its circumstances.

12

Taking the opposite view, Ness argues that *United States v. Charley*, 189 F.3d 1251 (10th Cir. 1999), sets a comparably concrete legal rule with which the district court in Ness's case could have solved the jury's difficulty. Op. Br. at 19–20 ("The jury would have been *hard-pressed to find*, with such clarification, that possession in December 2020 could qualify as reasonably near September 8, 2021.") (emphasis added). We disagree. *Charley*'s appellate-review rule for measuring the *sufficiency of evidence* of a crime's being "on or about" does not belong in a jury instruction. Under *Charley*'s rule, we have said the evidence might be *sufficient* if it "tend[s] to show that Defendant committed the crime within a few weeks of—or some other interval which, under the circumstances of the case, could be considered reasonably near to—[the specific date charged in the indictment]." *Charley*, 189 F.3d at 1273 (citing *Kokotan v. United States*, 408 F.2d 1134, 1138 (10th Cir. 1969)). Though this language guides our appellate review of sufficiency of the evidence, it is not workable for instructing a jury. Had the district court instructed in these terms, it would just have solicited more questions from the jury. What is a "few weeks"? Do "circumstances of the case" matter in Ness's case? That unworkability explains why this language from *Charley* has not made its way into our pattern jury instruction in the past twenty-five years.[5]

---

[5] The pattern jury instruction given to Ness's jury implements *Charley*'s direction that "on or about" means "reasonably near" the charged date.

13

Our pattern jury instruction properly leaves the jury with "reasonably near." If convicted, a defendant may appeal whether the criminal conduct was too remote from the date charged in the indictment. On appeal, we will then decide whether the defendant's criminal conduct occurred "reasonably near" the date charged in the indictment by measuring whether it occurred within a "few weeks," or an interval extended even further if we feel that justified by the case's circumstances. But the district court did not err by choosing not to inject more uncertainty into the jury's deliberations by using Ness's suggested clarifying instruction based on *Charley*.

## II.    "Plain" Error

As stated above, Ness's cited cases do not establish that the district court erred at all, let alone plainly. And he has provided us no other case finding error for a district court's failure to reinstruct the jury on "on or about" as Ness demands.

## III.    Substantial Rights

Even if Ness showed that the district court committed plain error by not reinstructing as he now wishes, he could still not show that the error affected his substantial rights. To do so, a defendant must ordinarily "show a reasonable probability that, but for the error" the outcome of the proceeding would have changed. *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004). A reasonable probability is one sufficient to undermine confidence in the outcome by causing the court to have doubts that the result would have

14

been the same. *United States v. Hasan*, 526 F.3d 653, 665 (10th Cir. 2008). Ness has not made this showing.

In arguing that the district court's alleged error affected his substantial rights, Ness focuses on the Creedmoor rifle and not the charged ammunition. *See* Op. Br. at 23 ("There is good reason to think the jury may have convicted based on possession of the Creedmoor rifle in December 2020."). In doing so, he argues that the jury had an "easier path" in finding that Ness possessed this rifle in December 2020—by video, photos, and his admitting so at trial—than in finding he possessed it on or about September 8, 2021. *See* Op. Br. at 12, 15. But Ness's conviction for the charged ammunition defeats that view.[6]

The jury found that Ness possessed the charged ammunition, which was the same ammunition seized from his residential trailer in September 2021. The charged ammunition is specific to the manufacturer, caliber, and number of pieces. So Ness's ammunition conviction required a jury finding that he possessed that trailer ammunition on or about September 8, 2021.[7] We see no way for the jury to find that he possessed the ammunition in the trailer but not

---

[6] We do not understand Ness to argue that the jury might have convicted him for possessing the *ammunition* he fired from the Creedmoor rifle in December 2020. He acknowledges that "[t]he only proof of his possession of the ammunition was what was found at his trailer in September 2021." Op. Br. at 23. And the indictment charged Ness with possessing only that ammunition.

[7] And because the verdict form had the jury convict Ness for possession of the ammunition and firearm separately, his § 922(g)(1) conviction would stand even if the jury had not convicted him of possessing the firearm.

15

the Creedmoor rifle there too. And Ness must factor his friend Irwin's testimony that the firearm had been uncased and moved from where Irwin had left it in the trailer days before. Someone uncased and moved the firearm, and Ness was the sole occupant of the trailer.

Further, even if we considered only the Creedmoor rifle and not the ammunition, Ness could still not show a reasonable probability of a different outcome on the firearm conviction. Ness argues that the jury might well have been asking whether "on or about September 8, 2021" could reach back to his self-admitted firearm possession in December 2020. He argues that this was "by far the easiest path" for conviction and that the jury had "good reason to think possession in December 2020 might, under the law, be reasonably near to the charged possession date of September 8, 2021." Op. Br. at 27–28. But after reviewing the closing arguments, we disagree.

First, the government never argued that Ness's self-admitted December 2020 possession justified a conviction by itself.[8] Instead, we understand its argument to be that this December possession and the other earlier Facebook evidence was relevant to Ness's knowledge that the firearm and ammunition

---

[8] For that reason, we assume, Ness has not raised an issue of constructive amendment of the indictment. *See United States v. Miller*, 891 F.3d 1220, 1236, 1238 (10th Cir. 2018) (vacating defendant's false-statement conviction because the court could not tell whether the jury convicted on uncharged conduct after the government "argued to the jury that both of these statements [one uncharged] were falsehoods sufficient to sustain a conviction").

16

were in his trailer on September 8. In short, the parties tried the case as though the government had offered that evidence under Federal Rule of Evidence 404(b), and the court had given the jury a limiting instruction on the narrow, permissible uses of the evidence under that rule.[9]

Second, Ness's closing argument shows that the jury may well have been uncertain about whether September 5–7 qualified as "on or about"—not about whether December 2020 did. After all, Ness's counsel argued that the government needed to show possession on September 8, 2021, saying "[w]e're not talking about other dates." He continued, "You know, the Judge gave us an instruction, on or about, but the 8th day of September, on or about, is what we're charged with." He referenced Ness's December 2020 possession of the firearm and argued that it was "not on the 8th of September." Later, he argued that "whenever we get down to it, it knowingly has to violate on the 8th day of September." And he wrapped up by arguing that Ness "was not in knowingly [sic] possession of this -- of this ammunition and the gun back on the 8th day of September." So all told, we conclude that Ness has not shown a reasonable probability of a different outcome, even if he had been able to show error that was plain.

---

[9] Had either party been alert to Rule 404(b), the district court almost surely would have given the jury a limiting instruction that would have solved the problem that Ness now alleges requires the district court's supplementing the pattern instruction on "on or about." We stress that the "on or about" issue raised by Ness arises not from the pattern instruction's deficiency but from the parties' disregard of Rule 404(b).

**CONCLUSION**

Because we conclude that the district court's response to the jury's question was not error, was not plain error, and did not affect Ness's substantial rights, we affirm.

No. 23-7051, *United States of America v. Justin Miles Ness*
**FEDERICO**, Circuit Judge, concurring.

When during deliberations the jury asks the court a question about the law, the court has a duty to respond that gives the jury as much clarity as the law provides. That did not happen here. When the jury asked the trial judge a somewhat unintelligible question, but one that with any close examination could only be about how to apply the law to the evidence, the court gave a written response that this panel all agree was nonresponsive.

Reviewing for plain error, I conclude the district court's nonresponsive answer to the jury was plainly erroneous. However, because Ness fails to persuade this error affected his substantial rights, I join the majority to affirm his conviction.

**I**

First, a short word about plain error. It arises from Federal Rule of Criminal Procedure 52(b), wherein "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." As this court recently reaffirmed, "[a] party seeking relief under the plain-error rubric bears the burden of showing '(1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affects substantial rights.'" *United States v. BNM*, 107 F.4th 1152, 1170 (10th Cir. 2024) (quoting *United States v. Finnesy*, 953 F.3d 675, 684 (10th Cir. 2020)). If

1

these factors are met, we may exercise discretion to correct the error if "it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting *Finnesy*, 953 F.3d at 684). "Satisfying all four prongs of the plain-error test is difficult," *id.* (quoting *United States v. Benally*, 19 F.4th 1250, 1256 (10th Cir. 2021)), which is to say that the plain error exception "is to be 'used sparingly,'" *United States v. Denogean*, 79 F.3d 1010, 1012 (10th Cir. 1996) (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)).

## II

The point where I diverge from the majority opinion is its conclusion that the district court did not err in providing a nonresponsive answer to the jury's legal question. Specifically, the majority concludes "the district court did not err by choosing not to inject more uncertainty into the jury's deliberations by using Ness's suggested clarifying instruction . . . ." Majority Op. at 14.

This court has long approved the pattern "on or about" instruction that was given to the jury in this case. *See United States v. Poole*, 929 F.2d 1476, 1482 (10th Cir. 1991) (noting this same instruction "has been approved by this Circuit on numerous occasions."). Although our pattern "on or about" instruction is purposefully opaque (more on this below), it is not enough to say the district court can satisfy its duty to instruct without at least trying to clarify the law when the jury asks a question about this instruction.

2

It is axiomatic that "[i]t is the duty of the court to instruct the jury as to the law, and it is the duty of the jury to follow the law as it is laid down by the court." *Sparf v. United States*, 156 U.S. 51, 74 (1895). The court's duty to instruct is not simple because the law is complex. Even in a relatively straightforward criminal case, jury instructions can be lengthy, verbose, circular, and confusing. This is why courts spend so much time hashing out the jury instructions with the parties because single words can become magnified when delivered to the jury. And importantly, the court's duty to instruct on the law continues when the jury returns questions during its deliberation.

Here, the jury's question included the language "on or about," which strongly suggested the jury needed clarification on the law, not the evidence. While recognizing that the question was ambiguous, the district court also properly recognized the jury's question concerned the "on or about" legal principle.

Upon receipt of the question and outside of the presence of the jury, the trial judge said to the parties: "My inclination is simply to write a response that says 'You have all the evidence you need to render your verdict.' The other option is that I could refer them to the instruction titled 'On or About,' but I don't know whether I need to do that or not." R.III at 341. The parties agreed to the first approach without any substantive discussion about the jury's question or what a proper response would be as to the law.

3

A bedrock legal principle is that "[w]hen a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy." *Bollenbach v. United States*, 326 U.S. 607, 612-13 (1946). The majority concludes that when a clear answer ("concrete accuracy") is not available, the trial court does not err if it were to provide, in substance, no answer at all. But that cannot be correct, given the court's duty to instruct on the law, even when a concrete legal answer may be somewhat elusive.

This then begs the question as to what the trial judge should have done to avoid the error, as I perceive it. First, the trial court should have provided an answer that was responsive to the jury's question. As noted, the jury's question was somewhat unintelligible. But the best reading, and really the only fair reading, is that the jury needed guidance concerning the "on or about" instruction related to the trial evidence or, as the jury foreperson wrote: "How far back do we go back on the dates[,]" R.I at 104.

The trial court's response was to tell the jury: "You have all the evidence you need to render your verdict." *Id.* This nonresponsive and confusing answer was erroneous, and it was plainly erroneous under *Bollenbach. See United States v. Olea-Monarez*, 908 F.3d 636, 639 (10th Cir. 2018) ("[A] district judge has a duty to guide the jury toward an intelligible understanding of the legal and factual issues it must resolve, particularly when the jury asks a question

4

revealing its confusion over the central issue of the case.") (quoting *Shultz v. Rice*, 809 F.2d 643, 650 (10th Cir. 1986)).

Second, the trial court should have considered the evidence, the applicable law, and the instructions already given to the jury, and it should have taken a measured approach as to how to fulfill *Bollenbach*'s directive to provide "concrete accuracy" to answer the jury's question. Consider a few points about this case that made the jury's confusion almost inevitable:

- There was compelling video, photographic, and textual evidence from Facebook showing Ness in December 2020 shooting, possessing, and commenting on the Creedmoor rifle;

- The charged offense was possessing the Creedmoor rifle (and ammunition) "on or about" September 8, 2021;

- Ness was not present at his trailer on September 8, 2021 when it was searched and the Creedmoor rifle and ammunition were seized, giving rise to the charged offense; and

- The trial court gave three instructions relevant to this inquiry: "On or About" (R.I at 91); "Indictment – Consider Only Crime Charged" (R.I at 93), and "Count One – Felon in Possession of Firearm and Ammunition." (R.I at 94-95). In this last instruction, the date of the charged offense was not included in the elements of the offense.

Bearing in mind this evidence and the instructions given, the jury's question naturally arose from its difficulty figuring out what to do with the December 2020 Facebook evidence in relation to the charged offense. Put differently, the jury struggled to determine whether December 2020 was "on or about" September 8, 2021.

Our pattern jury instruction says that "on or about" means "reasonably near." 10th Cir. Crim. Pattern Jury Instructions No. 1.18 (2021); *see also Poole*, 929 F.2d at 1482; *United States v. Agnew*, 931 F.2d 1397, 1401 (10th Cir. 1991). Purposefully, the instruction is vague so the trial court can adapt it to the facts and evidence of the charged offense. Conversely, it provides little guidance to juries as to what it means to be "near" the date charged and whether the date of the conduct is "near" enough to the date charged to be considered "reasonabl[e]." But just because this instruction is purposefully vague, it does not mean that it is unmoored from any temporal limitations.

In this case, for a single count charge of felon in possession of a firearm, the law does not support that December 2020 is "reasonably near" September 8, 2021. A review of the case law shows that a nine-month gap is too long to support a felon in possession conviction under these facts and circumstances. *See, e.g., United States v. Charley*, 189 F.3d 1251, 1272–73 (10th Cir. 1999) (holding that evidence of conduct "within a few weeks of" the charged date is sufficient to support a conviction); *United States v. Houston*, 813 F.3d 282, 291 (6th Cir. 2016) ("While an incident that occurred eleven months before the date on the indictment is not 'reasonably near,' this court has upheld admitting evidence of events that took place thirty-three days and two weeks before the date on the indictment.") (citations omitted); *Real v. Shannon*, 600 F.3d 302, 308 (3d Cir. 2010) (holding that evidence of conduct "within a month" of the

6

charged date is sufficient to support a conviction) (collecting cases). So, although the majority is correct that *Charley* does not establish a concrete legal rule that evidence must be "within a few weeks of" the date charged to be "reasonably near" it, the district court should have surveyed the law and decided the gap in time was too long to be reasonable in this case. Then, it should have instructed the jury that December 2020 is not "on or about" the date of the charged offense, September 8, 2021.

In my view, the trial court's failure to fully deliberate on this question was plainly erroneous. The pattern jury instruction uses "reasonably near" to afford some necessary flexibility for trial courts to make reasoned judgments that are case and fact specific. Take *Charley* again, where the defendant was charged with multiple counts of sexual abuse of minor children. At trial, the minor children had difficulty recalling exactly when they were abused by the defendant. *Charley*, 180 F.3d at 1257-58. In such a case, that turns upon the memory of a child witness, the meaning of "on or about" or "reasonably near" is a different analysis than the evidentiary landscape here, where the trial court had Facebook evidence from December 2020 and seized evidence from September 8, 2021, the date charged. Given these facts, the failure to give the jury a response to its question that would assist with its important decision-making was plainly erroneous.

7

**III**

Despite the error that occurred here, it did not affect Ness's substantial rights. Setting aside the evidentiary gap in time for when he possessed the Creedmoor rifle, the majority is correct that the evidence concerning the rifle *and* the ammunition made his conviction a certainty. So, although we take a slightly different path to reach affirmance, I join the majority in reaching that destination.